## Mark G. Earle v. State of Vermont

[743 A.2d 1101]

No. 98-254

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed November 24, 1999

*Michael F. Hanley* and *Barney L. Brannen* of *Plante, Hanley & Brannen, P.C.*, White River Junction, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Mark J. Patane*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Johnson, J.** Plaintiff Mark Earle appeals a ruling of the superior court granting summary judgment to the Department of Social and Rehabilitation Services (SRS) on the grounds that his negligence claims against SRS are barred by the statute of limitations. Plaintiff

sued SRS claiming that SRS's negligence allowed him to be sexually abused by an older boy in SRS custody. Because the trial court erred in answering the threshold question of how to apply the retroactivity provision of the statute of limitations for cases of childhood sexual abuse, we reverse and remand.

■ "[S]ummary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). The question of which statute of limitations applies to plaintiff's claim is one of law. See *Fitzgerald v. Congleton*, 155 Vt. 283, 294, 583 A.2d 595, 602 (1990). In this case, the trial court erred in concluding on the basis of the alleged facts that the six-year statute of limitations for childhood sexual abuse was not available to plaintiff. The error lay in failing to consider when plaintiff discovered his "injury or condition was caused by the act of sexual abuse," for purposes of the retroactivity provision in 12 V.S.A. § 522. The trial court failed to recognize that a plaintiff alleging injuries from childhood sexual abuse may allege distinct immediate and long-term injuries or conditions, and that both types of injury must be considered in determining the application of the retroactivity provision, as well as the statute of limitations. Additionally, applying the standard articulated in *Rodrigue v. VALCO Enterprises*, 169 Vt. 539, 541, 726 A.2d 61, 63 (1999), we clarify that plaintiff's action did not accrue until he knew at least that his injuries may have been a result of a breach of duty by SRS.

The following facts are undisputed. Plaintiff was born on February 8, 1975. He lived in a trailer with his mother and brother on his grandparents' farm, across the street from the grandparents' home. Plaintiff's mother received counseling and services from SRS to aid her in developing parenting skills. Plaintiff's grandparents provided foster care to an older boy, N.C., and N.C. was regularly in the company of plaintiff and his brother, sometimes acting as a babysitter. The parties agree that N.C. had no record of sexually abusive behavior prior to plaintiff's reports. Between December 1980 and April 1982, N.C. sexually abused plaintiff on numerous occasions.

In December 1980, plaintiff reported N.C.'s sexual abuse for the first time. He told his mother that N.C. had forced plaintiff to put N.C.'s penis in his mouth. Plaintiff was five years old. Plaintiff's mother reported the behavior to SRS. The agency confirmed the assaults, but did not remove N.C. from the grandparents' home. In April 1982, plaintiff, then seven, told his mother he was still being

abused by N.C., and that he had recently been anally raped by N.C. Plaintiff's mother again reported the behavior to SRS. The agency recommended prosecution of N.C. by the Windsor County state's attorney and began seeking alternative accommodations for N.C. In September 1982, SRS removed N.C. from placement with plaintiff's grandparents.

The record before the trial court revealed the following facts. Counseling for plaintiff was provided by SRS beginning sometime in 1983 or 1984. Plaintiff attempted to commit suicide in 1984, which prompted plaintiff's mother to send plaintiff to a live-in school in late 1984. In 1986, plaintiff was engaging in self-mutilation and other self-destructive and anti-social behavior. In 1987, when plaintiff was twelve years old, he was diagnosed with a conduct disorder and major depression, and found to exhibit persistent suicidal ideation. He was hospitalized in late 1988 or early 1989 to prevent another suicide attempt.

Although plaintiff was never in SRS custody, SRS maintained information concerning him in connection with services provided to his mother. Following juvenile delinquency proceedings in 1991, SRS maintained an independent file on plaintiff. Plaintiff's present counsel first requested access to SRS information concerning plaintiff on December 15, 1995. As the result of a court order filed in Windsor Superior Court, plaintiff's counsel received a copy of this SRS file on September 25, 1996. Included in the file were records of SRS's action following plaintiff's mother's reports of sexual abuse of plaintiff.

Plaintiff filed a complaint against SRS on October 24, 1996, alleging that SRS had breached a duty owed plaintiff by failing to prevent N.C. from sexually abusing plaintiff and failing to intervene once the sexual abuse was reported. SRS filed a motion for summary judgment, arguing that plaintiff's claims were time-barred by all applicable statutes of limitations.[1] Plaintiff opposed the motion, arguing that his complaint had been timely filed. The superior court granted summary judgment to SRS, concluding that, even if all of plaintiff's alleged facts were accepted as true, the applicable statute of limitations barred this action.

The trial court concluded that the six-year statute of limitations applying to child sexual abuse, see 12 V.S.A. § 522, did not apply

---

[1] SRS filed a second motion for summary judgment which dealt with issues related to the merits of the case. These issues were not addressed in the trial court's order, which granted summary judgment on the purely procedural basis that the statute of limitations had expired.

because the acts of sexual abuse had occurred before July 1, 1984 (the date upon which § 522 became retroactively available). Applying the three-year statute of limitations applicable to a personal injury action, see 12 V.S.A. § 512, tolled until plaintiff's eighteenth birthday, see 12 V.S.A. § 551, the trial court concluded plaintiff had to have filed this action by February 8, 1996, which he did not. The trial court declined plaintiff's request to toll the statute because SRS had allegedly obstructed plaintiff's access to his records, determining that both SRS and plaintiff had contributed to the delay. This appeal followed.

■ On appeal, plaintiff claims that the trial court erred in concluding that plaintiff brought his claim outside of the three-year statute of limitations of 12 V.S.A. § 512; alternatively, he asserts that the six-year statute of limitations of 12 V.S.A. § 522 should apply.[2]

The first question that must be addressed is whether § 522 — which encompasses plaintiff's claim substantively — should be applied to plaintiff's claim under the retroactivity provision created by the Legislature. The second question, once the applicable statute of limitations is determined, is when plaintiff's cause of action accrued, and hence whether this action was timely. The error by the trial court in this case lay in equating these two questions. Although in many cases the two dates may coincide, the facts of this case indicate that the triggering events for the retroactivity analysis and the accrual of plaintiff's cause of action occurred at two different times.

## I.

■ To properly analyze whether plaintiff's claim is barred by applicable statutes of limitations, we must first determine which statute of limitations applies to plaintiff's claims. The six-year statute of limitations of § 522 would normally govern plaintiff's claims, given their subject matter. That statute provides in relevant part:

> A civil action brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within six years of the act alleged to have caused the injury or condition, or six years of the time the victim discovered that the injury or condition was

---

[2] Plaintiff also contests the trial court's refusal to toll the statute of limitations in the period of time during which SRS refused to give plaintiff his records. Plaintiff brought an access-to-records claim in Windsor Superior Court, before filing this suit, and that court specifically found that the delay was the result of actions by both plaintiff and SRS. Therefore, we affirm the trial court's decision not to toll the statute of limitations.

caused by that act, whichever period expires later. The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury.

12 V.S.A. § 522(a). In *Sabia v. State*, we clarified that the word "act" in this context should not be interpreted to refer solely to the alleged act of sexual abuse, but could refer also to the alleged act of negligence by a third party. See *Sabia v. State*, 164 Vt. 293, 309, 669 A.2d 1187, 1198 (1995). Therefore, plaintiff's claim against SRS for failing to prevent N.C. from abusing him falls within the category of cases intended to be covered by § 522.

The statute of limitations was enacted in 1990, however, and applies retroactively only to cases where "the act of sexual abuse or the discovery that the injury or condition was caused by the act of sexual abuse occurred on or after July 1, 1984." 1989, No. 292 (Adj. Sess.), § 4(b). Thus, the threshold question is whether plaintiff's claim is encompassed in the period of retroactive application, even though it is substantively within § 522. Since the abuse ceased after N.C. was removed in 1982, the question is whether plaintiff discovered that his injury or condition was caused by the act of sexual abuse after July 1, 1984.[3]

In cases of childhood sexual assault, the Legislature has specifically indicated that the injuries of which a plaintiff is immediately aware and the injuries that may manifest only later are *both* relevant for purposes of applying the retroactivity provision. The statutory language instructs that the act of sexual abuse "*or the discovery that the injury or condition was caused by the act of sexual abuse*" must have occurred on or after July 1, 1984. 1989, No. 292 (Adj. Sess.), § 4(b) (emphasis added). The provision takes into account the fact that the psychological effects of abuse and even the memory of the abuse and perpetrator may be more difficult to discover than the fact that some sort of abuse occurred, precisely because the victims are children and because the traumatic events may disrupt memory function and cognition. See J. L. Herman, *Trauma and Recovery* 34 (1992); A. Rosenfeld, *The Statute of Limitations Barrier in Childhood Sexual Abuse Cases: The Equitable Estoppel Remedy*, 12 Harv. Women's L.J. 206, 208-09 (1989); E. Sue Blume, *The Walking Wounded: Post-Incest Syndrome*, 15 SIECUS Rep. 5 (1986).

---

[3] Because this provision provides specific guidance for the statute's retroactive application, it supersedes the usual rule that the applicable statute of limitations is the one in effect at the time the cause of action accrued. See *Stewart v. Darrow*, 141 Vt. 248, 253, 448 A.2d 788, 790 (1982).

Legislatures in other states have enacted statutes of limitations indicating a similar awareness of the difficulties faced by survivors of child sexual abuse. California's statute provides: "the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness . . . was caused by the sexual abuse, whichever period expires later." Cal. Civ. Proc. Code § 340.1 (West 1999). The legislative history includes references to the fact that survivors of child sexual abuse have difficulty connecting the abuse and the psychological illnesses that may surface years later. See *Sellery v. Cressey*, 55 Cal. Rptr. 2d 706, 711-12 (Ct. App. 1996) (examining legislative history of statute of limitations); see also *Mark K. v. Roman Catholic Archbishop of Los Angeles*, 79 Cal. Rptr. 2d 73, 77 (Ct. App. 1998) (referring to "the liberalized statute of limitations for victims of childhood sexual abuse").

The Washington legislature used language more similar to Vermont's provision. The Washington statute provides:

(1) All claims or causes of action . . . for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:

(a) Within three years of the act alleged to have caused the injury or condition;

(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or

(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.

Wash. Rev. Code § 4.16.340 (1999). The legislature further stated that its intent was to provide for situations where the victim may be unable to understand or make the connection between childhood sexual abuse and emotional harm until many years after the abuse and those where victims who are aware of some childhood sexual abuse discover serious injuries many years later. See *Hollmann v. Corcoran*, 949 P.2d 386, 391 (Wash. Ct. App. 1997) (reviewing legislative history). In *Hollmann*, the court concluded that subsection (c) addressed the claims of victims who are unable to connect the abuse and injuries experienced many years later and analogized those cases to the standard for actual knowledge under medical negligence statutes. See *id.* at 392. The court therefore held that the statute of limitations was

tolled until the victim of childhood sexual abuse "in fact discovers the causal connection between the defendant's act and the injuries for which the claim is brought." *Id.*

These cases provide insight into the significance of the distinction between the acts of abuse themselves and the injuries that result years later for many victims of childhood sexual abuse. The Vermont Legislature, like other legislatures, made this distinction in recognition of the unique nature of childhood sexual assault. We join other courts in giving effect to that statutory language.

■ The retroactivity provision poses a straightforward inquiry: Did the plaintiff discover the injury or condition resulting from childhood sexual abuse sometime after July 1, 1984? The date of discovery under the retroactivity provision seeks to establish an objective cut-off date for claims. For purposes of the retroactivity provision, *plaintiff's simple awareness of the resultant injury or condition itself* marks the date by which it will be determined whether the plaintiff's claim falls within the period of retroactive application.

■ We do not, however, read the retroactivity provision or the statute of limitations itself as providing limitless causes of action, accruing every time a new condition is discovered. Normally, a plaintiff cannot claim that an additional limitations period is inaugurated when additional injuries arising from the same incident are discovered later. A cause of action is generally deemed to accrue at the *earliest* point at which a plaintiff discovers an injury and its possible cause. See *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 526, 496 A.2d 154, 160 (1985). Therefore, any plaintiff attempting to bring more than one claim for damages caused by the same instances of sexual abuse would generally have to show why the cause had not already accrued. But the plain language of the retroactivity provision makes it clear that the Legislature intended courts to look at something more than just the date of sexual abuse. It directs us to consider the date when such abuse was linked to a psychological effect as an event that may bring a case within the retroactive application of the statute.

To decide, as SRS urges, that delayed psychological trauma deriving from a childhood sexual assault is not a distinct "injury or condition" would render meaningless the text of the retroactivity provision, where a distinction is drawn between the date of the abusive act and the date of the discovery of an injury or condition

caused by the act. Because it is an assault on one's person, obviously a victim will be aware, on some level, of the immediate injury caused. The language of the retroactivity provision, however, anticipates that the immediate and long-term effects of a child sexual assault will be distinct occurrences. See 1989, No. 292 (Adj. Sess.), § 4(b). This dualism echoes the statute of limitations itself. See 12 V.S.A. § 522.

In this case, plaintiff's complaint alleged both immediate physical trauma of repeated sexual assaults and also long-term psychological effects. These psychological effects include a suicide attempt in 1984 and a diagnosis of a mental illness, post-traumatic stress disorder, in 1987. Additionally, plaintiff attempted suicide again in 1988 or 1989.

■■ Therefore, while plaintiff in this case has not alleged that a specific condition was discovered by him after July 1, 1984, neither do the alleged facts preclude this possibility.[4] Though there were early manifestations indicating that plaintiff was a troubled child, plaintiff's first suicide attempt apparently took place in late 1984, before he was sent to a live-in school in November 1984. Thus, it is possible under the alleged facts in this case that it was sometime after July 1, 1984 when plaintiff discovered that his "injury or condition" was caused by the act of sexual abuse. Therefore, the case must be remanded because the applicable statute of limitations turns on an undetermined issue of fact: What specific "injury or condition" plaintiff

---

[4] In applying the retroactivity provision, the trial court believed that "[t]he key to resolving which statute of limitations applies lies in determining when the plaintiff's cause of action accrued." The court thus equated the date of accrual under the statute of limitations with the date of discovery that determines whether a plaintiff's claim falls within the retroactivity period. This was error for two reasons.

First, the date of accrual under the statute of limitations and the date of discovery under the retroactivity provision cannot be equated because they are determined by different acts. The statute of limitations hinges upon "the act alleged to have caused the injury or condition." In *Sabia*, we clarified that the word "act" in this context may refer to the alleged act of negligence by a third party. See *Sabia*, 164 Vt. at 309, 669 A.2d at 1198. The act at issue here is SRS's allegedly negligent failure to prevent N.C. from abusing plaintiff. The cause would not accrue, however, until plaintiff had reason to know that SRS may have been negligent. See *Rodrigue*, 169 Vt. at 541, 726 A.2d at 63. In contrast, the retroactivity provision hinges upon "the *act of sexual abuse or the discovery* that the injury or condition was caused by the act of sexual abuse." 1989, No. 292 (Adj. Sess.), § 4(b) (emphasis added). The retroactivity provision is triggered only by the act of abuse or the discovery of an injury caused by that abuse. Plaintiff's understanding of SRS's potential culpability, which would trigger accrual of the cause of action, is irrelevant to the question of retroactivity.

Second, the date of accrual and the date of discovery under the retroactivity provision cannot be equated because they serve different purposes. The statute of limitations seeks to identify the point at which a plaintiff should have filed suit; the retroactivity provision seeks to establish an objective cut-off date for claims.

alleges as the basis for SRS's liability[5] and when plaintiff discovered that injury or condition caused by the childhood sexual abuse.

## II.

Because it will arise on remand, we address the question of when plaintiff's action should be deemed to have accrued for purposes of applying whichever statute of limitations is ultimately determined to govern this case. We note, however, that if it is determined that 12 V.S.A. § 522 is available to plaintiff, it, like all other statutes of limitations, would be tolled until plaintiff was eighteen years of age if the action accrued prior to age eighteen, see 12 V.S.A. § 551, thus placing plaintiff's action within the limitations period.

The Legislature's use of "discover" in § 522 builds upon the case law developed for physical injuries and the so-called "discovery rule."[6] Our "discovery rule" cases hold that a cause does not accrue for physical injuries until those injuries reasonably should be discovered. The Legislature's language simply extends the scope of "injury" to encompass psychological or emotional injuries, which often cannot be discovered at the time they are caused. As Justice Gardebring observed in her dissent in *Blackowiak v. Kemp*, 546 N.W.2d 1, 4 (Minn. 1996), the statutory language may have been used "in recognition of the fact that injuries from sexual abuse are often psychological in nature, that they may be essentially latent for many years . . . and that shame and denial often accompany the events."

---

[5] The question of whether SRS was negligent is not before us today, and we do not express any opinion on that issue. If, using the proper framework to determine the statute of limitations on remand, the trial court finds that the action was timely, then it will resolve the ultimate questions of injury and negligence.

[6] Some background on the discovery rule may be helpful. The discovery rule for physical injuries was first adopted in *Cavanaugh v. Abbott Laboratories*. There, the plaintiff was exposed *in utero* to synthetic estrogen, made by the defendants, which eventually caused vaginal cancer in plaintiff. She argued that the limitations period in her cause of action should not have commenced before she was diagnosed with vaginal cancer because, though her injury had originally been inflicted many years before, the injury was not discoverable until she was diagnosed. See 145 Vt. at 519, 496 A.2d at 156. We examined the definition provided in our case law, most notably in *Murray v. Allen*, 103 Vt. 373, 376, 154 A. 678, 679 (1931), which held that an action accrues at the time of the last negligent act by the defendant. See *Cavanaugh*, 145 Vt. at 523-25, 496 A.2d at 159-60. We abandoned the *Murray* rule, instead holding that an action accrues when the injury was discovered by the plaintiff rather than when the injury first occurred, to unify the definition of accrual in statute of limitations cases and because allowing the limitations period to run before the plaintiff discovers an injury would be unjust. See *id.* at 525-26, 496 A.2d at 160. This comported with the statutory definition of "accrue" found in 12 V.S.A. § 512(4) (adopted in 1976).

■ The date of accrual under the statute of limitations seeks to identify the point at which a plaintiff should have discovered the basic elements of a cause of action: an injury caused by the negligence or breach of duty of a particular defendant. See *Rodrigue*, 169 Vt. at 541, 726 A.2d at 63. There, we stated the limitations period begins to run when a plaintiff "had information, or should have obtained information, sufficient to put a reasonable person on notice that a particular defendant may have been liable for the plaintiff's injuries." See *id.* Our holding clarified that a cause of action accrues when a plaintiff discovers that a *particular defendant* may have breached a duty. The *Rodrigue* plaintiff was injured by a drunk driver who allegedly had been overserved at the defendant's establishment. The plaintiff argued that his cause did not accrue until he discovered that the defendant had indeed overserved the driver. We rejected that argument, concluding that when the plaintiff knew of his injury, knew the driver who caused it and knew the driver had been drinking at the defendant's establishment, then he was on sufficient notice to pursue the defendant. See *id.* at 541, 726 A.2d at 63-64.

■ In this case, there was no reason for plaintiff to suspect that SRS owed him a duty at all until he knew that SRS knew of N.C.'s abuse of plaintiff. While the record reveals that plaintiff's mother reported the abuse to SRS, deposition testimony by plaintiff raises a question of whether plaintiff knew of SRS's position at the time of the abuse. This was not a case where plaintiff had something slightly less than an airtight case; absent the information that SRS knew about the abuse, there was little more than bold speculation that SRS had any responsibility for plaintiff's injuries. In this sense, SRS's actions were a "hidden proximate cause," contrary to the trial court's conclusion. This scenario is distinguishable from that in *Rodrigue*, where the plaintiff knew that the driver had been drinking at the defendant's establishment on the night of the accident. See *id.* at 541, 726 A.2d at 64. In the instant case, the existence of any duty at all was not apparent to plaintiff at the time his injuries were inflicted.

Because of the trial court's misapprehension of the application of the retroactivity provision, the record below is incomplete. On the existing record, however, we cannot conclude as a matter of law that plaintiff's discovery of an injury or condition resulting from an act of sexual abuse occurred before July 1, 1984. It is not possible for us to say with certainty when plaintiff's discovery of his psychological conditions did occur, but it is clear that the trial court failed to consider a genuine issue of material fact, namely when plaintiff first

discovered a condition caused by sexual abuse. Thus, summary judgment on this issue was in error.

*Reversed and remanded for further proceedings consistent with this opinion.*