*Radcliffe v. Sunrise Family Resource Center*, 310-10-17 Bncv (Barra, J., June 5, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Bennington Unit | CIVIL DIVISION<br>Docket No. 310-10-17 Bncv |

| | |
|---|---|
| Darrell Radcliffe,<br>    Plaintiff<br><br>v.<br><br>Sunrise Family Resource Center,<br>    Defendant | DECISION ON MOTION |

This matter is before the court on Defendant's Motion for Summary Judgment. Plaintiff filed tort claims arising from sexual abuse allegedly perpetrated by Defendant's former employee when Plaintiff was enrolled in its facility in 1988. Defendant argues that Plaintiff's claims are barred by the six-year statute of limitations in 12 V.S.A. § 522, governing actions based on childhood sexual abuse, and by the equitable doctrine of laches. For the reasons that follow, the motion is DENIED.

### FACTUAL BACKGROUND

Mr. Radcliffe was born on June 30, 1984. In 1988, he was enrolled in daycare at Sunrise Family Resource Center. He claims that a former employee of Sunrise sexually abused him while he attended that facility. Mr. Radcliffe filed his Complaint on October 30, 2017, bringing claims of battery, negligent hiring, negligent supervision, negligence, and negligent infliction of emotional distress, for which he seeks compensatory and exemplary damages.

Mr. Radcliffe has a long history of mental health problems and has received treatment with multiple healthcare providers. There is evidence before the court that at various points in his life he was diagnosed with ADD, ADHD, PTSD, anxiety, and depression. Mr. Radcliffe maintains that he has always known that he was sexually abused at Sunrise. He has discussed the sexual abuse with several mental healthcare providers. Mr. Radcliffe alleges that although he knew he was sexually abused at Sunrise, and although he discussed the abuse with mental health providers, he did not know that his psychological conditions were caused by the sexual abuse until 2016. That year, he saw a physician's assistant, Shawn May, of Battenkill Valley Family Health, who explained to him the connection between the abuse and his conditions. Prior to 2016, Mr. Radcliffe claims that he associated his conditions with a multitude of other characteristics of his life, such as anger towards his father, poverty, relationship difficulties, bad luck, and problems in school.

CONCLUSIONS OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The record evidence must be considered in the light most favorable to the nonmoving party, who receives the benefit of all reasonable doubts and inferences. *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 25, 196 Vt. 356; *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

Sunrise first argues that Mr. Radcliffe's claims are barred by the statute of limitations in 12 V.S.A. § 522, which provides:

> A civil action brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within six years of the act alleged to have caused the injury or condition, or six years of the time the victim discovered that the injury or condition was caused by that act, whichever period expires later. The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury.

12 V.S.A. § 522(a). The statute is applicable to this matter by virtue of the retroactivity provision in the enacting legislative act, which provides that the statute applies to all causes of action commenced after July 1, 1990, "so long as either the act of sexual abuse or the discovery that the injury or condition was caused by the act of sexual abuse occurred on or after July 1, 1984." See 1989, No. 292 (Adj. Sess.), § 4(b); *Earle v. State*, 170 Vt. 183, 188 (1999). The sexual abuse in this case is alleged to have occurred in 1988.

Additionally, § 522 is tolled until a plaintiff turns eighteen years of age if the action accrued prior to his eighteenth birthday. 12 V.S.A. § 551; *Earle*, 170 Vt. at 192. Here, Mr. Radcliffe was born on June 30, 1984 and turned 18 on June 30, 2002. If the action accrued before he turned 18, the six-year limitations period expired on June 30, 2008. However, it is possible that the action accrued under the discovery prong of § 522 after his eighteenth birthday, and within six years of the filing of the Complaint on October 30, 2017. Thus, at issue is whether there is a genuine dispute of fact as to whether the action accrued within six years of the filing of the Complaint.

The word "act" in § 522 does not "refer solely to the alleged act of sexual abuse, but could refer also to the alleged act of negligence by a third party." *Earle*, 170 Vt. at 188. The date of accrual under the statute of limitations turns on "the point at which a plaintiff should have discovered the basic elements of a cause of action: an injury caused by the negligence or breach of duty of a particular defendant." *Id*. at 193. The six-year limitations period begins to run "when a plaintiff 'had information, or should have obtained information, sufficient to put a reasonable person on notice that a particular defendant may have been liable for the plaintiff's injuries.'" *Id.* (quoting *Rodrigue v. VALCO Enterprises, Inc.*, 169 Vt. 539, 541 (1999)). The statute of limitations does not provide:

[L]imitless causes of action, accruing every time a new condition is discovered. Normally, a plaintiff cannot claim that an additional limitations period is inaugurated when additional injuries arising from the same incident are discovered later. A cause of action is generally deemed to accrue at the earliest point at which a plaintiff discovers an injury and its possible cause.

*Earle v. State*, 170 Vt. 183, 190 (1999).

"[T]he question of when an injury reasonably should have been discovered 'is one of fact to be determined by the jury.'" *Clarke v. Abate*, 2013 VT 52, ¶ 10, 194 Vt. 294 (quoting *Lillicrap v. Martin*, 156 Vt. 165, 172 (1989)). The court may determine the accrual-date issue only "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on that issue." *Id.* (quoting *Turner v. Roman Catholic Diocese of Burlington, Vermont*, 2009 VT 101, ¶ 48, 186 Vt. 396).

Here, Sunrise points to specific references in Mr. Radcliffe's medical records obtained during discovery and argues that they demonstrate that he was aware of the sexual abuse, the injuries and conditions resulting therefrom, and Sunrise's breach of a duty for more than two decades before filing the Complaint. These references, however, are small parts of broader narratives and descriptions of Mr. Radcliffe's many psychological problems and only prove that he discussed his alleged sexual abuse with mental health professionals at various points of his life. They do not prove as a matter of law that Mr. Radcliffe had information, or should have obtained information, sufficient to put a reasonable person on notice that the sexual abuse caused his psychological conditions or that Sunrise—as opposed to the alleged perpetrator—breached a duty of care, thereby accruing his cause of action six years before the filing of the Complaint. A jury may well make that finding, but Sunrise has failed to prove that there is no genuine dispute as to this material fact.

Sunrise's first reference to the medical records is from a 1995 psychological report prepared be a psychologist of the Bennington School District in connection with Mr. Radcliffe's need for special education. As part of this 12-page comprehensive psychological report on Mr. Radcliffe, then 10 years old, the psychologist states that "Darrell was referred to a local therapist, Lou Propp, for individual therapy. The focus of Dr. Propp's therapy dealt with a sexual molestation when Darrel was quite young." The psychologist goes on to note that "[w]hen discussing his therapy with Dr. Propp, Darrell reported that it had to do with his abuse in younger years. He expressed that he saw Dr. Propp for over a year, but he 'fired him' for telling his secrets to his mother." The report further provides that "Darrell still suffers from some depressive symptomatology, is quite angry regarding losses and past abuse in his life . . . ." The report, however, also contains references to Mr. Radcliffe's anger towards his father, low self-esteem, and social isolation. It concludes that Mr. Radcliffe "suffers from a poor self-image, elevated anxiety with a low frustration tolerance, social isolation, and levels of internal anger . . . . These behaviors are understandable when they are framed in [Mr. Radcliffe's] past, ongoing social isolation, and his feelings of loss regarding his natural father."

Sunrise's second reference to the medical records comes from a 1997 "Daily Report," in which the author documents that upon asking Mr. Radcliffe "where he wanted to go with the conversation [they] had over the issue of abuse he encountered in daycare," he replied that "it

was done and over with he did not want [the] case reopened." The report also describes anger and feelings of helplessness.

Sunrise also submits that a 1998 Psychological Services Report demonstrates ongoing awareness, acknowledgement, and discussion of his conditions and the alleged abuse. However, the psychologist explains that Mr. Radcliffe's myriad psychological problems are caused by multitudinous factors, the interaction of which could not be explained at the time. The report identifies low self-esteem and severe difficulty in social situations. It describes Mr. Radcliffe as being overwhelmed with a host of issues and concludes that "[h]e does not, therefore, do well with his cause and effect thinking in the area of behavior and emotions." As to the causes of his problems, this trained psychologist explained that "there are a variety of factors at work," including innate cognitive strengths and weaknesses, developmental issues, and issues surrounding "internal emotions and turmoil." The psychologist concludes that "the exact explanation of how the various factors interact with one another cannot be fully explained."

Reference is also made to a 2011 Crisis Evaluation Form, which records that Mr. Radcliffe presented with anxiety, sleep paralysis, and night terrors precipitated by the birth of his son. The document lists Mr. Radcliffe's family history, including his mother's PTSD and his brother's personality and bi-polar disorders. It goes on to list "triggers," namely, "toxic family, grandma dying of lung cancer, and childhood sexual abuse in a daycare run by United Counseling Services—can't get services in that area." Sunrise observes that Mr. Radcliffe pointed to a connection with UCS, which is affiliated with Sunrise and thereby identified a connection between abuse, injuries, and the Defendant.

A July 2011 Discharge Summary from Brattleboro Retreat, a mental health facility, provides that "[h]e endorses a history of physical, emotional and sexual abuse during childhood."

A December 2011 Emergency Department Report from Southwestern Vermont Medical Center outlines Mr. Radcliffe's complaints, medical history, exams, medication, etc. It states: "[Mr. Radcliffe] provides me with a long and complex past history including child abuse and sexual assault in day care." The report goes on to explain that Mr. Radcliffe felt he could not be treated locally by United Counseling Services "because they have a connection with the daycare in which he was sexually assaulted as a child." However, the report also describes Mr. Radcliffe's discussion regarding his father and further states that Mr. Radcliffe complained of being "very shaky" and that he did not think this was a psychiatric problem, but rather an undiagnosed medical problem.

Finally, December 2011 progress notes describe Mr. Radcliffe as a "patient with long-standing history of anxiety and posttraumatic stress disorder standing from child abuse when he was in daycare."

Viewing this evidence in the light most favorable to Mr. Radcliffe, and giving him the benefit of all reasonable doubts and inferences, these references to medical records do not prove as a matter of law that Mr. Radcliffe had information, or should have obtained information,

sufficient to put a reasonable person on notice that the sexual abuse caused his psychological conditions or that Sunrise breached a duty of care. They only prove that Mr. Radcliffe knew he was sexually abused at the Sunrise facility and that he discussed the abuse with mental health professionals at various points of his life. There is no evidence that the health professionals explained a causal connection between abuse and condition to Mr. Radcliffe. Indeed, there is evidence that at least one trained psychologist could not explain the interaction between Mr. Radcliffe's many psychological problems and their apparently multiple causes. Thus, there is no evidence at present from which to find that a reasonable person should have made the required link before Mr. Radcliffe allegedly did.

Even the most direct reference to a link between abuse, condition, and defendant is insufficient. The 2011 progress notes stating that Mr. Radcliffe is a "patient with long-standing history of anxiety and posttraumatic stress disorder *standing from child abuse when he was in daycare*" only proves that the treating physician could have made the link. The document does not prove that the doctor related this information to Mr. Radcliffe, nor is there any other evidence to that effect. Moreover, because the Complaint was filed on October 30, 2017 and the progress notes are dated December 7, 2011, any possible link would fall within the six-year limitations period.

Additionally, the referenced medical records serve as a legally sufficient evidentiary basis for a reasonable jury to find for Mr. Radcliffe. In his affidavit, Mr. Radcliffe submits that he did not make the necessary connection until he saw a physician's assistant in 2016. Mr. Radcliffe maintains that before this, he associated his conditions with numerous other characteristics of his life, such as anger towards his father, poverty, relationship difficulties, bad luck, and difficulties in school. Multiple medical records in evidence substantiate this claim. The records speak of Mr. Radcliffe's anger towards his father, low self-esteem, problems in school and with family, social isolation, and a poor self-image. They also speak of "a variety of factors at work," including innate cognitive strengths and weaknesses, developmental issues, and issues surrounding "internal emotions and turmoil." Given the evidence of multiple conditions and multiple possible causes, and the described complexity of their interactions, a reasonable jury could find for Mr. Radcliffe.

Accordingly, there is a genuine dispute of material fact on the statute-of-limitations issue that should rightly be decided by a jury.

Sunrise's second argument for summary judgment is that Mr. Radcliffe's claims are barred by the equitable doctrine of laches. "Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right." *Stamato v. Quazzo*, 139 Vt. 155, 157 (1980). It is not delay alone that gives rise to laches, "but from delay that works disadvantage to another." *In re Estate of Lovell*, 2011 VT 61, ¶ 10, 190 Vt. 99 (quoting *Comings & Livingston v. Powell*, 97 Vt. 286, 294 (1923).

The Supreme Court has recognized that victims of childhood sexual abuse "may be unable to understand or make the connection between childhood sexual abuse and emotional harm until many years after the abuse" and that "victims who are aware of some childhood sexual abuse discover serious injuries many years later." See *Earle v. State*, 170 Vt. 183, 189–90 (1999). In view of the evidence in this case of multiple psychological conditions and various possible causes, and the complexity of their interactions, the court cannot find as a matter of law that Mr. Radcliffe failed to assert his right to bring these claims for an unreasonable and unexplained period of time. Thus, summary judgment is not appropriate on grounds of laches.

For the reasons set forth above, Defendant's Motion for Summary Judgment is DENIED.

So ordered.


_____
**David Barra**
**Superior Court Judge**