HIGHTOWER, Judge.
Plaintiff, S.T.J., appeals a summary judgment dismissing his suit against court-appointed psychologists for damages caused by their alleged negligent and intentional acts in an earlier custody proceeding. We affirm.
FACTS
When plaintiff and his wife divorced in October 1983, they were granted joint custody of their minor son, B.J. After the mother remarried, plaintiff sought custody, alleging that the minor was being sexually molested by the stepfather. Following a lengthy trial, custody was awarded instead to the mother with limited visitations granted to the father. That decision was affirmed on appeal in S.J. v. S.M., 505 So.2d 897 (La.App. 2d Cir.1987), writ denied, 507 So.2d 229 (La.1987). Subsequent to more allegations of sexual abuse and additional hearings in late 1987 and early 1988, sole custody for the mother was again sustained both by the trial court and on appeal in S.J. v. S.M., 550 So.2d 918 (La.App. 2d Cir.1989).
In connection with the original contested custody proceeding, the trial court appointed Drs. Mark Vigen, Susan Vigen, and Ronald Goebel, all psychologists, as members of a team of mental health professionals commissioned to perform evaluations. Dr. George Seiden, a psychiatrist, was also appointed. The team’s subsequent written report to the court indicated no evidence of sexual abuse.
On May 27, 1987, after the initial affirmance on appeal, plaintiff filed the present suit against the stepfather and the three psychologists, seeking to recover civil damages “for the tortious loss of his relationship with his son stemming from the abuse and the team’s negligence under Louisiana Civil Code Articles 2315 and 2315.2.” [1] A second amended and supplemental petition, filed on March 21, 1988, alleged that the defendant psychologists “knowingly minimized or falsely discredited the findings of Dr. Meade O’Boyle for the purpose of hiding their own liability.” [2]
.On December 26, 1987, defendants moved for, and the trial court subsequently granted, summary judgment on the basis that, as court-appointed expert witnesses, they were entitled to absolute immunity.
In this appeal, appellant argues that the immunity urged is inapplicable to this case because defendants established a psychologist-patient relationship by undertaking treatment of the child. Further, it is contended that the psychologists unilaterally evaluated the child when there was no longer a court order, to do so, and are thus not protected by immunity. It is also suggested that, since defendants neither answered the second amended and supplemented petition which set forth an intentional tort claim, nor supplemented their motion for summary judgment in response, there exists a genuine factual dispute concerning issues raised by the amendment.
DISCUSSION
LSA-C.C.P. Art. 966 provides for summary judgment and reads, in pertinent part, as follows:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
*246 B. ... The adverse party may serve opposing affidavits prior to.the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law....
Of course, the legal principles regarding a summary judgment are well settled. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This is a difficult burden. Only when reasonable minds must inevitably concur is summary judgment warranted and any doubt should be resolved in favor of trial on the merits. Ebarb v. Erwin, 530 So.2d 1166 (La.App. 2d Cir.1988). The mover’s pleadings, affidavits and documents are to be scrutinized closely while those of the opponent are to be indulgently treated. Toole v. Tucker, 519 So.2d 348 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1156 (La.1988). Summary judgment is not to be used as a substitute for a full trial of a controverted factual issue which is material to the decision of the case. The likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for entering summary judgment. Adams v. Traveler’s Ins. Co., 420 So.2d 507 (La.App. 2d Cir.1982), writ denied, 422 So.2d 426 (La.1982).
In the present case, defendants sought summary judgment on the basis of an absolute immunity from suits for damages. With respect to testimony in judicial proceedings, the immunity of parties and witnesses from subsequent liability was well established in English common law. Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), and cases cited therein. Recovery could not occur even if a witness knew statements were false and made them with malice. Indeed, the common law extended absolute immunity to all persons who were integral parts of the judicial process. Briscoe, supra.
Under those same principles, state judges have been accorded absolute immunity from liability for their judicial acts, Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), reh’g denied, 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), as have state prosecutors for their actions in initiating prosecutions, Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Louisiana jurisprudence has mirrored the federal judicial immunity doctrine. Moore v. Taylor, 541 So.2d 378 (La.App. 2d Cir.1989); Cleveland v. State, 380 So.2d 105 (La.App. 1st Cir.1979).
Today, even nonjudicial persons appointed to fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damages arising from their performance of delegated functions. Moses v. Parwatikar, 813 F.2d 891 (8th Cir.1987) (psychiatrist in a competency examination); Meyers v. Morris, 810 F.2d 1437 at 1466 (8th Cir.1987) (psychologists-therapists who evaluated child victims of alleged sexual abuse).
Such immunities have been thoroughly addressed by the federal courts. In Briscoe v. LaHue, supra, the United States Supreme Court considered a convicted defendant’s 42 U.S.C. § 1983 damage claim against a police officer for perjured testimony at an earlier criminal trial. It was concluded that all witnesses, including police officers and lay witnesses, are absolutely immune from civil liability based on their testimony in judicial proceedings. Quoting Calkins v. Sumner, 13 Wis. 193, 197 (1860), the policy behind witness immunity was recited as follows:
(T)he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the *247 ascertainment of truth should be left as free and unobstructed as possible.
The court explained that, without such immunity, witnesses might be reluctant to come forth to testify and, additionally, their testimony might be distorted by fear of subsequent liability.[3]
As indicated previously, in Meyers v. Morris, supra, the U.S.Court of Appeals for the Eighth Circuit accorded court-appointed therapists, as nonjudicial persons fulfilling quasi-judicial functions, absolute immunity from damage claims.
In Moses v. Parwatikar, supra, the same court held that a psychiatrist appointed to determine competency in a criminal proceeding was absolutely immune from suit, and that even pleading conspiracy between him and other state officials did not pierce that immunity. It was observed that the psychiatrist’s function was analogous to that of a witness in any judicial proceeding, citing Kurzawa v. Mueller, 732 F.2d 1456 (6th Cir.1984). Similar to other witnesses, without absolute immunity, psychiatrists would be reluctant to accept court appointments and the threat of civil liability might taint their overall opinions. See Williams v. Rappeport, 699 F.Supp. 501 (D.Md.1988), concluding that court-appointed doctors are generally entitled to the same immunity as judges. See also Burkes v. Callion, 433 F.2d 318 (9th Cir.1970), cert. denied, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); Miner v. Baker, 638 F.Supp. 239 (E.D.Mo.1986).
We conclude that appellant’s claim will not withstand an assertion of absolute quasi-judicial immunity and the above'cited authorities. Although many of the aforementioned decisions concerned claims arising under 42 U.S.C. § 1983, they are nevertheless applicable to the case at hand. The rationale underlying the need for absolute immunity cannot be limited to only cases which arise under § 1983. We see little distinction between the case sub judice and Moses and Meyers, supra. Similar to both those instances, the present professionals were court appointed and rendered reports and recommendations which aided the court in making a final decision.
LSA-C.C.P. Art. 373 provides that an expert appointed to assist the court in the adjudication of a case through his special skill and knowledge is “an officer of the court from the time of his qualification until the rendition of a final judgment in the case.” Clearly then, appointed psychologists are non-judicial persons fulfilling quasi-judicial functions and are classified as officers of the court with functions intimately related to the judicial process. Hence, as in Meyers, supra, they are entitled to absolute immunity protecting them from having to litigate the manner in which they perform those functions. Should they be found unprotected by such immunity, it can be envisioned that psychologists would seek to avoid future court appointments and that fear of civil liability could mar opinions and recommendations given to the court.
Appellant maintains that the defendants failed to answer his second and supplemental amending petition which alleged intentional acts on their part. Yet, as the Supreme Court noted in Briscoe v. LaHue, supra, absolute immunity precludes recovery for even knowingly false statements made with malice. Moreover, allegations of conspiracy will not penetrate such a shield. Moses, supra. Thus, notwithstanding defendants’ failure to answer the supplemental and amending petition in question, the allegations made there cannot defeat the immunity asserted.
Neither are we impressed with appellant’s contentions that the defendants went beyond the scope of their court-appointed duties and conducted private treatment of the child sufficient to create a psychologist-patient relationship. Plaintiff alleges no form of treatment which would give rise to such a relationship, relying instead in his brief upon the single word “treated” appearing in a June 11, 1985 report to the court signed by defendants and Dr. Seiden, *248 the psychiatrist. Nor does his petition as supplemented allege any damages caused by “treatment.” Rather, he alleges that damages arose out of the “investigations” performed by the defendants as well as the “recommendations” which ensued, along with the “evaluations” conducted by the psychologists in response to the findings of Dr. O’Boyle.
Under LSA-C.C.P. Art. 373, defendants remained officers of the court until rendition of the final judgment. Hence, we find no merit to appellant’s claim that further evaluation or investigation by them, prior to that judgment, was unprotected by immunity.
Based upon the foregoing, there remains no genuine issue for trial. The defendants are entitled to absolute immunity based on their appointment by the court as non-judicial persons whose duty it was to fulfill quasi-judicial functions. Plaintiff’s demands cannot prevail when faced with that immunity. Accordingly, the trial court judgment is affirmed at appellant’s cost.
AFFIRMED.

. The suit commenced as an action by appellant personally and as tutor for his minor son. After the trial court sustained an exception to his lack of procedural capacity to assert a claim on behalf of the child, appellant filed an amended and supplemental petition setting forth only his claim against defendants for the loss of his relationship with his son. Brentwood Hospital, also originally a defendant, was subsequently dismissed by consent.

. During the first custody litigation, the father employed the services of Dr. O'Boyle, a pediatrician, who opined that the child had been sexually abused. The amended petition alleged that, after learning of. Dr. O’Boyle’s evidence, defendants undertook a second "investigation” of the alleged abuse.

. The Louisiana Supreme Court has noted that communications in judicial or quasi-judicial proceedings carry an absolute privilege. Bienvenu v. Angelle, 254 La. 182, 223 So.2d 140 (La.1969).