John L. BLACK, Plaintiff and Appellant,

v.

H. James CLEGG, John C. Baldwin, Stephen A. Trost, Nayer H. Honarvar, and Paul T. Moxley, Defendants and Appellees.

No. 950334.

Supreme Court of Utah.

May 9, 1997.

Daniel G. Darger, Parker M. Nielson, Salt Lake City, for plaintiff and appellant.

Carman E. Kipp, Gregory J. Sanders, Sandra L. Steinvoort, Salt Lake City, for defendants and appellees Thomas L. Kay, David N. Wolf, Salt Lake City, for Home Insurance Co.

HOWE, Justice:

Plaintiff John L. Black, a Utah attorney, appeals from the trial court's grant of summary judgment dismissing on the basis of official immunity his complaint against Utah State Bar officials for deprivation of his right to notice and a hearing, interference with the due course of justice, and the filing of a false certificate in a disciplinary proceeding brought against him by the Bar. We must determine whether immunity applies.

## FACTS

Black brought this action against Bar President H. James Clegg, Bar President-elect Paul T. Moxley, Bar Executive Director John C. Baldwin, Bar Counsel Stephen A. Trost, and Assistant Bar Counsel Nayer H. Honarvar, alleging deprivation of his civil rights under section 1983 of the 1871 Civil Rights Act.[1] 42 U.S.C. §§ 1981–1996 (1988). He additionally alleged failure to prevent such deprivation against Clegg and Moxley under 42 U.S.C. § 1986[2] and complained that they exercised inadequate supervisory control over Trost and Honarvar. Moxley has since been dismissed from the action and is not a party to this appeal.

We begin with a brief recital of the relevant facts, noting that we must determine only whether defendants' actions fell within the scope of their official responsibilities. Therefore, we need not specifically address each of Black's allegations. Likewise, his challenges to the substantive merits of the disciplinary action are irrelevant here.

In the course of his law practice, Black executed a written promise to use part of the funds he would receive from a personal injury settlement to pay the medical fees of a California chiropractor who treated Black's client and prepared medical reports for use in obtaining the settlement. When Black failed to make payment as agreed,[3] the chiropractor complained to the Utah State Bar, and the Bar initiated disciplinary proceedings against Black.

During the pendency of those proceedings, this court adopted the Rules of Lawyer Discipline and Disability (RLDD), which trans-

---

1. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Section 1986 provides:

   Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented....

   The relevant violations in 42 U.S.C. § 1985 include "[o]bstructing justice; intimidating party, witness or juror" and "[d]epriving persons of rights or privileges."

3. Black contends that under section IX(E) of the Interprofessional Code (Second Edition), an attorney "is ethically forbidden to pay debts, medical or otherwise, incurred by a client.... [T]he attorney should not [and ethically cannot] pay for or guarantee payment of medical services rendered to the client." He argues that therefore it would be unethical for him to fulfill the contractual obligation to the chiropractor which he himself voluntarily and knowingly entered into.

ferred jurisdiction over disciplinary matters from the Bar Commission to the district courts effective July 1, 1993. In a letter of June 1, 1993, Honarvar notified Black, through his counsel, of the pending rule change and informed him that all formal cases would be transferred to the district court with proper venue as of July 1, 1993. The letter further advised Black that there remained only a narrow window in which to settle his case and stated that after June 30 "the Bar Commission will no longer be involved in any way with discipline." [4]

Black's counsel responded on June 7 with a letter addressed to Trost and Honarvar, stating, "We are gratified to learn that this matter will now be handled by a real court," and offering, in a bellicose tone, to accept a stipulation from the Bar dismissing the complaint.[5] On June 15, a hearing panel of the Utah State Bar entered findings of fact and conclusions of law with a recommendation of discipline against Black. On June 24, Clegg signed an order on behalf of the Board of Bar Commissioners affirming the hearing panel's findings of fact and conclusions of law and recommending discipline. The order was mailed to Black on June 29. Black complains that Bar officials did not promptly serve him with the panel's findings and conclusions and allow him to respond to them before Clegg signed the order and before the Bar Commission lost jurisdiction.

Under the pre-July 1993 rules, Black had a right to file a petition with the Bar Commission to amend, modify, or reconsider its recommendation of discipline. On July 9, 1993, nine days after the Bar Commission lost its jurisdiction, he filed such a petition. On July 19, Bar Counsel submitted to this court a motion for clarification of the procedural status of the case and also requested a continuance of proceedings on Black's petition pending our ruling. On August 16, we responded, giving Black leave to file an appeal with this court in lieu of his hearing before the Bar Commission. On October 20, Black had still not filed a notice of appeal. When he did not respond to a letter from Trost reminding him of his right, the Bar filed a certificate of readiness for supreme court review, stating that Black had not filed a petition for amendment, modification, or reconsideration. That statement was technically inaccurate because Black had filed such a petition but functionally correct because he filed it after the Bar Commission lost jurisdiction and he did not follow up with the authorized appeal to this court. However, Black charges the Bar with filing a false certificate and obstructing justice and argues that official immunity does not protect defendants because such conduct is not part of a prosecutor's function. Subsequently, Black petitioned this court for dismissal of the Bar's order. We granted his petition with instructions to the Bar to process the complaint against Black under the new rules. To date, Black has not been disciplined.

Black complains that because he was not served with the findings and conclusion of the panel before the findings were reviewed by the Board and signed by Clegg and he was not afforded a hearing before the Board, defendants have deprived him of his civil rights and are personally liable for damages under 42 U.S.C. §§ 1983 and 1986. He maintains that immunity under these sections does not apply to "the filing of a certificate with this court, falsely stating that an attorney had not requested a hearing on intermediate appeal to the Board of Bar Commissioners." Black emphasizes that he is suing defendants in their individual capacities, not as officers or agents of the Bar. He seeks $1,100,000 in unspecified damages to his law

---

4. Black's complaint characterizes this letter as "threatening that if Black did not 'consent' to discipline ... the complaint would be 'transferred to the district court with proper venue as of July 1, 1993,'" and states that the letter was "extortion."

5. The actual wording of the letter was:
I agree that this development provides "a narrow window of opportunity." After July 1 you and Mrs. Honarvar will be subject to the same rules as apply to other litigants, including Rule 11 and the prohibitions against bad faith litigation contained in Utah Code Annotated § 78–27–56. In the same spirit as expressed in Mrs. Honarvar's letter of June 1, Mr. Black will accept a stipulation to dismiss your groundless, bad faith complaint prior to July 1. Failing your doing so, Mr. Black has expressed a resolve to pursue his remedy under the foregoing provisions.

practice, plus money damages for his "anxiety, rage, apprehension, worry and other mental anguish," although his license has not been revoked or suspended and he has received no public or private reprimand.

## ANALYSIS

■ The trial court dismissed Black's complaint on the basis of official immunity. "A dismissal is a severe measure and should be granted by the trial court only if it is clear that a party is not entitled to relief under *any* state of facts which could be proved in support of its claim." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990) (emphasis added). If immunity applies, Black is not entitled to relief under "any state of facts which could be proved" relative to damages and deprivation of civil rights.

### A. Immunity Under State Law

■ Rule 13 of the RLDD states:

Participants in proceedings conducted under these rules shall be entitled to the same protections for statements made in the course of the proceedings as participants in judicial proceedings. *The district courts, Committee members, and disciplinary counsel and staff shall be immune from suit*, except as provided in Utah Rules of Civil Procedure 65A and 65B, *for any conduct in the course of their official duties.*[6]

(Emphasis added.) By its plain language, this rule applies to individuals acting in the course of their official duties. The facts recited above demonstrate that defendants' actions were occasioned by their various roles in the prosecution of a Bar disciplinary action. Moreover, in *Bailey v. Utah State Bar*, 846 P.2d 1278 (Utah 1993), we held that when individuals act " 'in the performance of an integral part of the judicial process,' the policies underlying judicial immunity apply and immunity should be granted." *Id.* at 1280 (quoting *Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir.1965)). Black charges that defendants' actions, particularly the filing of the inaccurate certificate of readiness for su-

preme court review, were wrongful and contends that such conduct fails this "function test." However, as the Second Circuit Court held in *Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994), "[I]mmunity attaches to [a prosecutor's] function, not to the manner in which he performed it." *Id.* at 83 (quoting *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986)). Therefore, if the challenged acts fall within the categories constituting a prosecutor's duties, the acts are part of his official function, even if he acts imperfectly. The filing of certificates is a routine part of a prosecutor's function, and Black's objection to defendants' manner of performance does not change the fact that they acted in the course of their official duties.

### B. Immunity from Suits Pursuant to 42 U.S.C. §§ 1983 and 1986

■ Black complains of deprivation of notice and a hearing under sections 1983 and 1986 of the Civil Rights Act. However, official immunity applies under both federal and state law. In *Dacey v. New York County Lawyers' Ass'n*, 423 F.2d 188, 193 (2d Cir. 1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970), the Second Circuit Court of Appeals held:

Section I of the Civil Rights Act of 1871, 42 U.S.C. § 1983, which creates liability for the deprivation of rights under color of law ... did not abolish the settled principle of judicial immunity. The Supreme Court has clearly instructed that, in the absence of a specific congressional rejection of the doctrine, the immunity of judges for acts within the judicial role must be considered to have survived the enactment of the Civil Rights Act.

We observed in *Bailey* that "[q]uasi-judicial immunity has also been extended to others involved in the judicial process, such as prosecutors, *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir.1966); ... and state bar associations, their personnel and committees, *Kissell v. Breskow*, 579 F.2d 425, 429–30 (7th Cir.1978)." *Bailey*, 846 P.2d at 1280 (other

---

6. The listed exceptions are factually inapplicable to the instant case, and Black has not argued that they apply.

citations omitted). In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the United States Supreme Court confirmed absolute immunity for prosecutors, stating:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution.... The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

424 U.S. at 424–25, 96 S.Ct. at 992. The Supreme Court further observed, "Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* at 425, 96 S.Ct. at 992. Trost and Honarvar acted as prosecutors in the disciplinary action and are therefore immune from suit under *Imbler, Bailey,* and the cases cited therein.

■ · Other Bar officials also enjoy immunity in the conduct of disciplinary proceedings. In *Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir.1978), the Fifth Circuit Court explicitly extended "absolute, or judicial immunity" against a section 1983 suit to a Bar grievance committee, affirming the district court holding that "as an arm of the State Supreme Court, the members of the grievance committee were protected against suit by judicial immunity." In *Moralez v. Thiede*, 828 F.Supp. 492, 494 (E.D.Mich.1993), the court held that the bar president was "entitled to judicial and quasi-judicial immunity from damages" in his role as the chief executive officer of an arm of the state supreme court. In addition, the immunity afforded a court in its official functions extends to its clerk. *Slotnick v. Staviskey*, 560 F.2d 31, 32 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). The Utah Constitution grants this court jurisdiction to regulate the practice of law, "including admission to practice law and the conduct and discipline of persons admitted to practice law." Utah Const. art. VIII, § 4. When the Bar and its officials participate judicially in that regulation, the court's cloak of judicial immunity reaches far enough to cover them. Thus, Clegg as Bar president and Baldwin as Bar executive acting as clerk of the disciplinary court are immune from suit. The same reasoning applies to a section 1986 suit, because if immunity bars a section 1983 action for deprivation of civil rights under color of law, there can be no liability for failure to prevent such a deprivation.

Black mistakenly relies on *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In that case, the Supreme Court denied immunity to a criminal prosecutor who fabricated false evidence during a pretrial investigation and made false statements to the press. Here, again, Black confuses function with manner. The court there found that when performing an *investigative function*, the prosecutor was entitled to the same qualified immunity extended to detectives and police, not to the absolute immunity granted to prosecutors involved in a prosecutorial function. 509 U.S. at 278, 113 S.Ct. at 2618, 125 L.Ed.2d at 228. The court also found that the "conduct of a press conference does not involve the initiation of a prosecution, the presentation of a state's case in court, or the action preparatory for these functions." 509 U.S. at 278, 113 S.Ct. at 2618, 125 L.Ed.2d at 228–29. *Buckley* is an entirely different case than the one before us, and the prosecutor there bears little, if any, factual resemblance to Bar officials conducting attorney disciplinary proceedings.

We conclude that the Bar was functioning as an arm of this court in regulating the practice of law and that defendants acted "in the course of their official duties" under RLDD 13. We therefore hold that defendant Bar officials are entitled to absolute immunity from suit in this action.

Affirmed.

ZIMMERMAN, C.J., and DURHAM, and RUSSON, JJ., concur.

Having disqualified himself, STEWART, Associate C.J., does not participate herein.