### Frances Politi v. Janet L. Tyler, Ph.D.

[751 A.2d 788]

No. 98-245

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed April 7, 2000

 

*Thomas C. Nuovo* of *Bauer, Anderson & Gravel,* Burlington, for Plaintiff-Appellee.

*Patricia S. Orr* of *Wilson Powell & Lang,* Burlington, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Dr. Janet Tyler appeals a Chittenden Superior Court decision denying her motion for dismissal and for judgment on the pleadings, as well as her summary judgment motion against plaintiff Frances Politi in this suit for malpractice and intentional infliction of emotional distress. Defendant argues that it was error for the court to reject her motions to dismiss and for judgment on the pleadings because she had judicial immunity or, in the alternative, witness immunity. Defendant also argues that she is entitled to summary judgment against plaintiff's malpractice claims because the statute of limitations has expired, or in the alternative, because she owed plaintiff no duty of care. Plaintiff cross-appeals, arguing that the court erred in dismissing her intentional-infliction-of-emotional-distress claims because it incorrectly measured the discovery date of her injury. We affirm.

Plaintiff and her husband, David Alexander, were divorced in 1990 pursuant to an order of the Chittenden Family Court. In early 1993, plaintiff was involved in a custody and visitation dispute with her ex-husband regarding their minor child. On March 18, 1993, the Chittenden Family Court issued an order that read: "Forensic evaluation will be done. . . . Counsel to let us know [within] a week who to engage for a forensic evaluation." The evaluation was intended to assist the court in determining the best interests of the child pursuant to 15 V.S.A. § 667(b).

Defendant, a licensed psychologist, contracted with plaintiff and Mr. Alexander to conduct the evaluation, with all fees to be paid equally by the parties. During May and June 1993, defendant met with plaintiff, the child, the ex-husband, and others whom the parties identified as having information relevant to the custody proceeding. In June 1993, defendant prepared a report detailing her psychological evaluation, which she distributed to the parties in September 1993.

Defendant testified about her evaluation and recommendation before the family court on March 22, 1994. On May 5, 1994, plaintiff and her ex-husband stipulated to a modified custody agreement.

On May 5, 1997, plaintiff brought suit against defendant for slander, malpractice, and intentional infliction of emotional distress. Plaintiff alleged that as a result of defendant's breach of her duty to professionally perform the forensic evaluation and defendant's subsequent testimony based on that evaluation, plaintiff was forced to stipulate to joint custody with David Alexander of her youngest son and forced to continue to fight for the custody of her son.

Defendant filed a motion to dismiss and for judgment on the pleadings or, in the alternative, a motion for summary judgment. Defendant claimed she had absolute judicial immunity as a court appointed expert. In the alternative, defendant contended that she had immunity as a witness in a judicial proceeding; that all of plaintiff's claims were barred by the statute of limitations; that her testimonial privilege precluded plaintiff's claim for slander; and that she did not owe any duty to plaintiff that would support a malpractice claim. The court rejected defendant's judicial immunity defense. The court declined to dismiss the malpractice claim, concluding that defendant owed a duty of care to plaintiff and that the claim included economic damages governed by a six-year statute of limitations. The court dismissed plaintiff's intentional-infliction-of-emotional-distress claim because the statute of limitations had expired. Plaintiff agreed to dismissal of her slander claim.

Defendant now appeals, arguing that the superior court erred in rejecting her claim of judicial immunity. Defendant further contends that the court failed to consider her argument that witness immunity precludes plaintiff's claims even if the court correctly concluded that defendant was not entitled to judicial immunity. Defendant also asserts that the court erred in holding that she owed a duty of care to plaintiff. Finally, defendant argues that the court erred in determining that the applicable statute of limitations for plaintiff's claim is six years. Plaintiff cross-appeals, arguing that her intentional-infliction-of-emotional-distress.claim was filed within the applicable three-year statute of limitations.[1]

---

[1] Each party filed a "supplemental appendix" after the time for the filing of the printed case and supplemental appendix had expired. See V.R.A.P. 30(a), (b). We grant plaintiff's motion to exclude defendant's supplemental appendix and defendant's motion to exclude plaintiff's supplemental appendix.

For defendant's claims that she is entitled to judgment as a matter of law on the pleadings, we consider all the factual allegations in the pleadings of the nonmoving party and all reasonable inferences that can be drawn from them to be true and allegations to the contrary by the moving party to be false. See *In re Estate of Gorton*, 167 Vt. 357, 358, 706 A.2d 947, 949 (1997). Similarly, for defendant's claims that she is entitled to summary judgment, as well as plaintiff's cross-appeal that summary judgment on her intentional-infliction-of-emotional-distress claim was improper, we apply the same standard as the trial court: summary judgment is appropriate when the record clearly indicates there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See *Lane v. Town of Grafton*, 166 Vt. 148, 150, 689 A.2d 455, 456 (1997). In determining whether a genuine issue of material fact exists, we regard as true all allegations of the nonmoving party supported by admissible evidence, and we give the nonmoving party the benefit of all reasonable doubts and inferences. See *id.*

## I. Defendant's Immunity Arguments

Defendant makes two immunity claims, either of which she asserts bars plaintiff's lawsuit: first, defendant argues that she is entitled to judicial immunity; in the alternative, she claims that she is entitled to witness immunity.

### A. Judicial Immunity

■ A determination of whether judicial immunity exists is a question of law. See *Lavit v. Superior Court*, 839 P.2d 1141, 1444 (Ariz. Ct. App. 1992); *LaPlaca v. Lowery*, 134 Vt. 56, 57, 349 A.2d 235, 235 (1975) (stating that review inquires "whether the lower court committed error in finding that the doctrine of judicial immunity sheltered the words complained of"). Vermont has long recognized the doctrine of judicial immunity. See *LaPlaca*, 134 Vt. at 57-58, 349 A.2d at 236 ("Vermont law has included a doctrine of judicial immunity which applies to judges, attorneys, and witnesses, since [1838.]"). However, judicial immunity extends only during the performance of an act which was judicial, and within the claimant's general authority. See *id.* at 58, 349 A.2d at 236; *Polidor v. Mahady*, 130 Vt. 173, 174, 287 A.2d 841, 843 (1972) ("This immunity does not reach beyond judicial acts.").

Defendant asserts that each of plaintiff's claims arise from allegations related to defendant's conduct as a court appointed expert.

Defendant points to other jurisdictions that have held court appointed psychiatrists and psychologists in custody matters are entitled to absolute immunity when fulfilling quasi-judicial functions. See *Lavit*, 839 P.2d at 1144-45 (cases cited therein regarding such immunity issues). Observing that Vermont "has not yet addressed the issue of immunity for experts who perform court ordered evaluations," defendant asserts that the facts of this case squarely present us with the issue. We disagree because we conclude that defendant was not a court appointed expert. The superior court correctly decided that the duties imposed on defendant arose from her contract with the parties, not from a quasi-judicial function performed pursuant to a family court order.

We begin by noting that the evaluation performed by defendant was not ordered by the family court pursuant to its authority under Rule 5(a) of the Rules for Family Proceedings, which provides:

> [I]n any proceeding of the family court the court may order a physical or mental evaluation of a party or of a person who is in the custody or legal control of a party or may order a home study. The court shall select the physician or other expert who will perform the evaluation or home study, and shall consider the names of persons submitted by the parties. The court shall determine who pays the cost of such evaluation and may order a party, the parties, or the court or some combination thereof to pay.

V.R.F.P. 5.[2] The court's March 18, 1993 order, which simply states that a "[f]orensic evaluation will be done" and that "counsel to let us know

---

[2] We agree with the dissent that the consequences of not having defendant appointed by court order are "painfully apparent." 170 Vt. at 437, 751 A.2d at 795. We disagree that the "oversight" is irrelevant. *Id.* In each of the cases cited by the dissent in support of extending quasi-judicial immunity, the expert was appointed by court order. See *Lavit*, 839 P.2d at 1142 ("This case involves an issue of statewide importance for *court-appointed* psychologists . . . .") (emphasis added); *Lythgoe v. Guinn*, 884 P.2d 1085, 1086 (Alaska 1994) (court appointed independent investigator in custody dispute); *Howard v. Drapkin*, 271 Cal. Rptr. 893, 894 (Ct. App. 1990) (parties' stipulation for use of expert signed by court and converted into an order); *Seibel v. Kemble*, 631 P.2d 173, 174 (Haw. 1981) (court appointed psychiatrists to serve on sanity commission); *S.T.J. v. P.M.*, 556 So. 2d 244, 245 (La. Ct. App. 1990) (court appointed psychologists to perform evaluations in custody dispute); *LaLonde v. Eissner*, 539 N.E.2d 538, 539 (Mass. 1989) (court appointed psychiatrist to evaluate family in visitation dispute); *Duff v. Lewis*, 958 P.2d 82, 84 (Nev. 1998) (court appointed psychologist to assess children in custody dispute); *Delcourt v. Silverman*, 919 S.W.2d 777, 779 (Tex. App. 1996) (court appointed psychologist to evaluate family in custody dispute); *Parker v. Dodgion*, 971 P.2d 496, 497 (Utah 1998) (court appointed psychologist to evaluate family in custody dispute).

within a week who to engage for a forensic evaluation," is not a sufficient order under those rules to categorize defendant as a court appointed expert entitled to immunity.[3] Contrary to defendant's current characterization of her role as a "court appointed expert," the language of defendant's contract with the parties is devoid of any suggestion that defendant was acting as an arm of the family court. Three excerpts from defendant's contract suffice to demonstrate that she did not view herself as an expert assigned by the court to perform the evaluation. First, the contract states that defendant "ha[s] been requested to do an evaluation and a written report" and makes no reference to a court appointment. Second, the contract states "I am willing to be retained by both of you to perform the evaluation and furnish a report in connection with Court proceeding upon the following conditions, which must be accepted by you." Third, the contract explicitly states that defendant's evaluation and testimony is predicated not upon the authority granted by a court order, but instead upon payment by the parties:

> I will not be called upon to furnish my report to any person nor to file the same in Court or discuss its contents in any way until all of my fees for services and the services of any consultants I may have retained have been paid in full.

In denying defendant's claim of judicial immunity, the superior court observed that the duties required of defendant "were imposed by a contract with the parties for her professional services and [are] comparable with what is expected of any expert witness jointly selected by litigants." The public policy arguments advanced by defendant for granting immunity to a court appointed psychologist may have persuasive force, but the facts of this case do not provide a basis upon which to conclude defendant was performing a judicial or quasi-judicial function pursuant to a court directive.

## B. Witness Immunity

While conceding that the superior court found nothing in defendant's performance that would set her apart as a judicial officer, defendant argues that the court failed to address the issue of witness immunity. Defendant's witness immunity claim relies primarily on *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983), where the U.S.

---

[3] The parties entered into a contract with defendant in May 1993. Neither the parties' counsel, nor defendant, informed the family court of the agreement.

Supreme Court held that a lawsuit against police officers based on their alleged perjured testimony could not be brought because witness immunity protected the officers. Defendant is correct in arguing that such an immunity protects the actual testimony she gave in family court on March 22, 1994, and plaintiff concedes that she may not predicate a claim on witness testimony. See *Deatherage v. Examining Bd. of Psychology*, 948 P.2d 828, 830 (Wash. 1997) ("The defense of absolute privilege [of witness immunity] generally applies to statements made in the course of judicial proceedings and acts as a bar to any civil liability.").

■ To the extent that defendant's assertion of witness immunity was intended to insulate her from liability for statements she made on the witness stand, the trial court's dismissal of the slander and intentional-infliction-of-emotional-distress claims render the issue moot as to those claims. Defendant argues that as to the malpractice claim witness immunity should preclude a complaint based on defendant's actions in conducting a forensic evaluation and preparing a report. Defendant's expansive interpretation of witness immunity would extend the doctrine to nontestimonial acts outside a judicial proceeding. Neither the decision of the United States Supreme Court in *Briscoe* nor the precedents of this Court provide a foundation for doing so. See, e.g., *Torrey v. Field*, 10 Vt. 353, 414 (1838) ("This privilege, or immunity, for words spoken, extends equally to . . . parties, witnesses, jurors, judges and counsel, *in courts of justice* . . . .") (emphasis added).

## II. Defendant's Duty of Care Argument

■ Defendant also argues that her only duty was to assist the family court in its determination of the best interest of the child in connection with custody and visitation, and that she thus owed no duty of care to plaintiff. Defendant owed whatever duties of care to plaintiff — and, for that matter, plaintiff's ex-husband — the contract provided. See *Peters v. Mindell*, 159 Vt. 424, 429, 620 A.2d 1268, 1271 (1992) ("Accompanying every contract is an implied duty to perform with care, skill, reasonable expedience and faithfulness."). A determination on plaintiff's negligence claims stemming from defendant's alleged breaches of this duty should proceed accordingly. Thus, defendant's summary judgment motion on plaintiff's malpractice claim was properly denied.

### III. Defendant's Statute of Limitations Argument

Defendant asserts that the superior court erred in its application of a six-year statute of limitations to plaintiff's malpractice claim. Plaintiff's malpractice claim included the following allegation:

> As a proximate cause of the Defendant's actions the Plaintiff was forced to seek counseling and was unable to continue in her career as a real estate broker, and was unable to work for long periods of time.

Defendant argues that the court erred by looking to the nature of the damages claimed by plaintiff rather than the nature of the harm done. See *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 575, 367 A.2d 677, 680 (1976). The court relied on our decision in *Fitzgerald v. Congleton*, 155 Vt. 283, 583 A.2d 595 (1990), in which we held that claims resulting in "mental anguish, emotional distress, and personal humiliation" were covered under 12 V.S.A. § 512(4)'s three-year statute of limitations, *id.* at 291, 583 A.2d at 599-600, but that damages sought by plaintiff for "economic losses that do not constitute personal injuries" fell under 12 V.S.A. § 511's six-year limitation. *Id.* at 293, 583 A.2d at 601.

In *Fitzgerald*, as in the case before us, the plaintiff's claim of malpractice sought personal injury damages for emotional distress but "[s]ome of the damages sought by plaintiff . . . [were] for economic losses that do not constitute personal injuries." *Id.* We determined that the plaintiff's claim included costs incurred by her to secure the return of her child. Here, to the extent plaintiff's claim of damages for work interruption is for economic losses incurred in the effort to retain custody of her child, they fall within the limitations of 12 V.S.A. § 511, and the court did not err in its application of a six-year statute of limitations to those economic losses.

### IV. Plaintiff's Cross-Appeal

Plaintiff cross-appeals the court's dismissal of her intentional-infliction-of-emotional-distress claim. She argues that the statute of limitations did not begin until May 5, 1994, when she stipulated to the family court's order expanding her ex-husband's custody and visitation of the minor child because that is when she suffered her injury. Plaintiff concedes that her claim falls under 12 V.S.A. § 512(4)'s three-year statute of limitations, and we have held that a cause of action under § 512(4) accrues when a party discovers or reasonably

should have discovered her injury. See *University of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 290-91, 565 A.2d 1354, 1356-57 (1989).

In the presence of plaintiff, defendant testified in the custody proceeding before the family court on March 22, 1994. Plaintiff's theory of defendant's liability for the intentional infliction of emotional distress is premised on defendant's responsibility for plaintiff losing sole custody of her son. Plaintiff's own pleadings allege that "as a direct result of [defendant's] testimony" in favor of the ex-husband having custody over the child, plaintiff "was forced to modify her parental rights and responsibilities." An action accrues on the date an individual discovers the cause of action. See *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 526, 496 A.2d 154, 160 (1985). Here, the trial court correctly concluded that plaintiff should have reasonably discovered the injury on or before March 22, 1994. Indeed, the significance of the date of defendant's testimony to the computation of the three-year statute of limitations was implicitly recognized by plaintiff, who mistakenly alleged the critical date of defendant's testimony to be May 5, 1994, and then filed the complaint on May 5, 1997, exactly three-years later. Plaintiff's attempt to minimize the significance of defendant's testimony to the accrual of the intentional-infliction-of-emotional-distress claim is belied by plaintiff's pleading. The court correctly concluded that plaintiff's claim for the intentional infliction of emotional distress is barred by § 512(4)'s statute of limitations.

*Affirmed.*

**Morse, J.,** dissenting. The Court's conclusion that Dr. Tyler, a licensed clinical psychologist, served as a privately retained expert witness rather than as a neutral adjunct of the trial court contradicts the overwhelming weight of the record evidence. The facts demonstrate that all of the principals — the court, the parties, and Dr. Tyler — understood the latter's role in this case to be that of a judicially appointed neutral evaluator. Courts have uniformly held that such experts perform a function integral to the judicial process, and therefore, like judges, are entitled to immunity from suit. Accordingly, I respectfully dissent.

While acknowledging that the arguments for granting immunity to court appointed mental health experts "may have persuasive force," 170 Vt. at 433, 751 A.2d at 792, the Court declines to address the issue because the "facts of this case do not provide a basis upon which to conclude defendant was performing a judicial or quasi-judicial func-

tion pursuant to a court directive." *Id.* I submit that the record supports precisely the opposite conclusion.

First, although not mentioned by the Court, Dr. Tyler's participation in this custody dispute was initiated by a motion, filed by plaintiff's husband, requesting that "*the court order a forensic evaluation* to be paid for by the parties in proportion to income and adjusted in consideration of their assets." (Emphasis added.) The motion conformed with the rule providing for the appointment of experts in family court proceedings, including the specific provision that the court may "determine who pays the cost of such evaluation and may order a party, the parties, or the court or some combination thereof to pay." V.R.F.P. 5(a).

The trial court responded with a handwritten order stating, in part, that "[d]efendant's request for a forensic evaluation shall be scheduled for a hearing." Following the hearing, the court issued a brief handwritten order stating: "Hearing held. Forensic evaluation will be done. Mary Kehoe to be appointed as a GAL. Parties to file Form 813. Counsel to let us know within a week who to engage for a forensic evaluation."

The order's meaning is unmistakable. The first operative phrase, "[f]orensic evaluation will be done," although couched in the passive voice, indicates that an evaluation will be done pursuant to the order. Although it is possible to construe the sentence as merely indicating that an evaluation will occur without the added implication that it be done pursuant to court order, any doubt is dispelled by the subsequent sentence: "Counsel to let us know within a week who to engage for a forensic evaluation." The only possible meaning of this sentence is that the parties submit to the court (who else could the "us" refer to?) the name of an expert agreed upon by the parties for appointment as an expert. The order tracked the family court rule governing appointment of experts, which provides that the court "shall consider the names of persons submitted by the parties." V.R.F.P. 5(a). As noted, the family court hearing that resulted in this order was held specifically in response to a motion for appointment of an expert.

Viewed in retrospect, it is painfully apparent that this lawsuit could have been avoided through the simple expedient of submitting Dr. Tyler's name, as the court directed, and having her appointment formalized in another order. This neglected final step, however, was undoubtedly an oversight, as the underlying intent, derived from the record summarized above, is clear. The parties and the court plainly understood Dr. Tyler's role to be that of a court appointed expert.

Indeed, in her subsequent complaint against Dr. Tyler for malpractice and infliction of emotional distress plaintiff candidly acknowledged Dr. Tyler's status as a court appointed expert, stating: "In a handwritten order . . . the Family Court . . . ordered a forensic evaluation."

Dr. Tyler's conduct after the appointment is entirely consistent with this conclusion. In her contract for services, she informed the parties that her function would be to "perform the evaluation and furnish a report in connection with [the] Court proceeding," that her "sole responsibility [was] to evaluate and report what, in my professional opinion, is in the best interest of the minor," and that they must agree to waive confidentiality in order for her to "*serve[] optimally as an evaluator.*" (Emphasis added.) Dr. Tyler's subsequent written evaluation, submitted to the court, was a model of disinterested psychological analysis. Her evaluation contained negative and positive assessments of both plaintiff and her husband. The report addressed in detail each of the factors set forth in 15 V.S.A. § 665 for determining the best interests of the child, and concluded with a list of specific custody and visitation recommendations that "*[t]he court may wish to consider*," as well as a final note stating that it had "been a most difficult and distressing case" because of the apparent emotional distress suffered by the minor. (Emphasis added.)

It is impossible to view this report as anything other than a neutral psychological assessment intended to advise and assist the court in rendering its decision. The Court's conclusion to the contrary is based upon several aspects of the previously mentioned contract of services. None is persuasive. First, the Court notes that the contract stated that Dr. Tyler had been "requested to do an evaluation and a written report" without referencing a court appointment. 170 Vt. at 433, 751 A.2d at 792. Common sense suggests, however, that a *privately* retained expert would have addressed the employing party in words such as "You have requested an evaluation," whereas the neutral "I have been requested" very likely referenced the trial court.

The Court also finds significance in the contractual provision stating, "I am willing to be retained by both of you to perform the evaluation . . . upon the following conditions, which must be accepted by both of you," as well as the subsequent condition that the parties split the payment. Again, the Court derives too much from these terms. The rule providing for appointment of experts expressly authorizes payment by the parties, as occurred here, and the contract's reference to being "retained by both of you" merely reflects

that contractual relationship. The existence of a contractual relationship, and the parties' payment obligation, is entirely consistent with Dr. Tyler's court appointment.[1]

Considered in light of the overwhelming evidence of the court and the parties' intentions, and the unmistakable tenor of the analysis and recommendations contained in Dr. Tyler's report, the conclusion is inescapable that she functioned in this case as a court appointed neutral evaluator. The only remaining question, therefore, is whether her service in that capacity entitled her to immunity from suit under the doctrine of quasi-judicial immunity.[2]

That question is easily answered. With virtual uniformity courts have granted absolute immunity to persons who perform functions similar to those performed by Dr. Tyler in this case. See, e.g., *Lythgoe v. Guinn*, 884 P.2d 1085, 1088-89 (Alaska 1994) (independent custody investigator appointed to provide advice and expertise granted absolute immunity); *Lavit v. Superior Court*, 839 P.2d 1141, 1144-45 (Ariz. Ct. App. 1992) (psychologist who performed child-custody evaluation exercised judicial function requiring absolute immunity); *Howard v. Drapkin*, 271 Cal. Rptr. 893, 902 (Ct. App. 1990) (psychologist who performed neutral evaluation in custody dispute entitled to same immunity given others who function as neutrals in resolving disputes); *Seibel v. Kemble*, 631 P.2d 173, 177 (Haw. 1981) (psychiatrist

---

[1] Indeed, several state courts that have considered the issue of immunity for mental health professionals in custody proceedings have explicitly rejected the notion that payment for an expert's services by the affected parties, or their contractual relationship with the expert, is inconsistent with the expert's quasi-judicial role as neutral evaluator. In *Lythgoe v. Guinn*, 884 P.2d 1085 (Alaska 1994), for example, the court held that the fact the parties had each paid half the costs of a custody investigator was "irrelevant to the quasi-judicial immunity issue, as courts have uniformly held that the determinative question is not how the court-appointed expert is selected or paid, but whether his or her 'activity is an integral part of the judicial process.'" *Id.* at 1093 n.6 (quoting *Lavit v. Superior Court*, 839 P.2d 1141, 1144 (Ariz. Ct. App. 1992)). *Lythgoe* relied on *Lavit*, where — as here — the parties in a custody dispute had stipulated to an expert and contracted for his services. As the court there explained, "[t]he question becomes not how the psychologist was first chosen but whether his activity is an integral part of the judicial process so that to deny immunity would disserve the broader public interest that non-judicial officers act without fear of liability." 839 P.2d at 1144; see also *LaLonde v. Eissner*, 539 N.E.2d 538, 542 n.9 (Mass. 1989) (payment of expert's services by party did "not affect [his] status as a quasi judicial officer entitled to immunity."); *Duff v. Lewis*, 958 P.2d 82, 86 (Nev. 1998) (psychiatrist appointed by court in custody dispute was not an advocate for either parent, even if paid by them).

[2] Although Dr. Tyler raised several other defenses, including witness immunity and the statute of limitations, it is unnecessary to reach these claims in view of the absolute immunity from suit afforded her under the doctrine of quasi-judicial immunity.

who rendered opinion regarding defendant's mental condition functioned as "arm of court" entitling him to absolute judicial immunity); *S.T.J. v. P.M.*, 556 So. 2d 244, 247 (La. Ct. App. 1990) (psychologists appointed to aid in resolving custody dispute performed quasi-judicial function entitling them to absolute immunity); *LaLonde v. Eissner*, 539 N.E.2d 538, 541-42 (Mass. 1989) (psychiatrist who performed independent evaluation in visitation dispute "entitled to immunity because of the function he performed and its essential connection to the judicial process"); *Duff v. Lewis*, 958 P.2d 82, 86-87 (Nev. 1998) (psychiatrist appointed to perform child assessments in custody dispute performed "integral function in assisting courts" entitling him to absolute quasi-judicial immunity); *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App. 1996) (psychologist appointed to evaluate children in custody dispute entitled to absolute immunity by fulfilling "quasi-judicial functions intimately related to the judicial process"); *Parker v. Dodgion*, 971 P.2d 496, 499 (Utah 1998) (psychologist appointed as evaluator in custody dispute entitled to immunity from suit).

Each of the foregoing decisions relied on the common law doctrine of judicial immunity, a venerable principle designed to protect the integrity of the judicial process by ensuring that judicial officers exercise their functions unconstrained by fear of reprisal. Indeed, as this Court early noted, "[i]t is a privilege not primarily designed for the protection of the judge, but for the *protection of the public*, by making the judges free, independent and fearless in the discharge of their duties." *Vaughn v. Congdon*, 56 Vt. 111, 128 (1883) (Powers, J., dissenting) (quoted with approval in *LaPlaca v. Lowery*, 134 Vt. 56, 58, 349 A.2d 235, 236 (1975)). This and other courts have extended the doctrine to so-called quasi-judicial officers, participants in the judicial process whose functions are closely associated with or comparable to judges. See, e.g., *Butz v. Economou*, 438 U.S. 478, 508-13 (1978) (participants in federal administrative adjudication entitled to quasi-judicial immunity); *Muzzy v. State*, 155 Vt. 279, 280, 583 A.2d 82, 83 (1990) (quasi-judicial immunity extends to state's attorney to extent that actions complained of are associated with judicial phase of criminal process); *Black v. Clegg*, 938 P.2d 293, 296-97 (Utah 1997) (quasi-judicial immunity applies to state bar officers and counsel in performance of attorney discipline functions).

As noted earlier, those courts that have considered the issue have also — with virtual unanimity — extended the doctrine of quasi-judicial immunity to mental health experts appointed to assist the

court in child custody proceedings. The reasoning of these decisions is unassailable. As cogently stated by the court in *Parker*:

> [C]ourts that have addressed this issue have uniformly held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial process and are therefore immune from suit. Several reasons support this conclusion. First, if these individuals are subject to suit, they will be much less willing to serve the court in such a capacity. Second, a psychologist who agrees to fill the role of court-appointed evaluator will be less likely to offer the disinterested, objective opinion the court seeks in making such an appointment if he or she is subject to suit.

971 P.2d at 498-99.

These policies apply with equal force in Vermont, and amply support the conclusion that Dr. Tyler was entitled to immunity from suit. Adequate safeguards against negligent or inaccurate evaluations exist in the form of deposing and cross-examining the expert at trial to bring to the court's attention any alleged deficiencies, or reporting the expert's behavior to the appropriate professional board for review. See *Lythgoe*, 884 P.2d at 1091; *LaLonde*, 539 N.E.2d at 542; *Seibel*, 631 P.2d at 177 n.8; see also Note, *Absolute Immunity for the Negligent Expert Witness*, 26 Willamette L. Rev. 1051, 1076 (1990).

Except for the final step of an order memorializing the parties' choice of Dr. Tyler as the expert to be appointed by the court, every objective fact in this case — from the initial motion seeking a court-appointed expert, to the court's order directing the parties to submit an agreed-upon name, to Dr. Tyler's independent evaluation and recommendations to the court, to plaintiff's complaint explicitly acknowledging that the family court had ordered a forensic evaluation — points to no other conclusion but that Dr. Tyler functioned as a court-appointed neutral evaluator. Indeed, in fulfilling that role, defendant left herself vulnerable to precisely the kind of lawsuit which the doctrine of quasi-judicial immunity is designed to forestall. It is an injustice and a disservice to her, and to the family court and the judicial system as a whole, to deprive Dr. Tyler of the protection to which she was entitled.