## Judy W. Fitzgerald v. William G. Congleton

[583 A.2d 595]

No. 86-558

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed October 19, 1990

*Jane Watson*, Burlington, for Plaintiff-Appellant.

*Paradis, Coombs & Fitzpatrick*, Essex Junction, for Defendant-Appellee.

**Gibson, J.** Plaintiff, Judy W. Fitzgerald, appeals from a decision of the trial court that her claim for legal malpractice was barred by 12 V.S.A. § 512(4). We hold that plaintiff's claim is not barred in its entirety, and, accordingly, reverse.

## I.

On September 28, 1981, attorney William G. Congleton, defendant, was paid a retainer to represent plaintiff and her husband in a juvenile proceeding in which the State alleged that their son was a child in need of care and supervision. The proceeding was held that same date, and on behalf of his clients, defendant admitted certain allegations of the petition at the hearing. Plaintiff asserts that those admissions resulted in the loss of custody of her son. On October 1, 1981, plaintiff and her husband discharged defendant as their attorney. They retained new counsel, who succeeded in having the juvenile proceeding dismissed in March of 1982.

In January of 1984, plaintiff and her husband retained yet another attorney to represent them in various claims arising from the juvenile proceeding. This attorney corresponded with defendant regarding a potential legal malpractice claim against defendant. On September 20, 1984, defendant agreed to toll the statute of limitations for sixty days in order to attempt a resolution of the dispute prior to the filing of a formal complaint. The waiver, however, only addressed claims by plaintiff's husband against defendant; it did not include a waiver of the statute of

limitations regarding any claim by plaintiff.[1] On November 18, 1984, plaintiff and her husband initiated a lawsuit against defendant, alleging legal malpractice. The complaint claimed a "breach of contract, negligence and violation of the Code of Professional Responsibility." Plaintiff and her husband sought damages for "emotional distress, . . . personal humiliation and lost custody of their son." They also set out a claim for punitive damages.

Defendant moved to dismiss on the basis that the cause of action was barred by the three-year statute of limitations, 12 V.S.A. § 512(4).[2] Plaintiff and her husband argued that the statute had been tolled by defendant's agreement to extend the limitations period by sixty days, and that, in any event, the applicable statute of limitations was not 12 V.S.A. § 512(4), but rather, the six-year statute of limitations, 12 V.S.A. § 511.[3] The trial court initially denied defendant's motion to dismiss on the basis that the statute of limitations had been waived, and declined to decide which statute applied to the facts of the instant case.

Defendant filed a motion for reconsideration, asserting that the waiver of the statute applied only to plaintiff's husband and not to plaintiff. The court granted defendant's motion for reconsideration, elected to treat the motion to dismiss as one for summary judgment, and entered summary judgment against plaintiff, finding that her claim was barred by § 512(4).[4] Plaintiff, however, had been given no notice of the motion for reconsideration. Upon being informed of the entry of summary judgment against her, plaintiff immediately objected, and the trial court allowed her additional time in which to respond to

---

[1] A copy of the complaint that was submitted to defendant with the request for waiver contained only the name of Daniel Fitzgerald as plaintiff.

[2] 12 V.S.A. § 512 provides: "Actions for the following causes shall be commenced within three years after the cause of action accrues, and not after: . . . (4) Except as otherwise provided in this chapter, injuries to the person suffered by the act or default of another . . . ."

[3] 12 V.S.A. § 511 provides: "A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter."

[4] The trial court initially stated that § 511, not § 512(4), applied, but this obvious error was corrected upon motion by the parties.

defendant's motion. After plaintiff's response, which included her affidavit, several other documents and a brief on the issue, the court reaffirmed its decision to grant summary judgment to defendant, and severed plaintiff's claim from her husband's claim so that an appeal of the order could be taken to this Court.

Plaintiff raises four issues on appeal: (1) the trial court erred when it failed to apply the six-year statute of limitations, § 511; (2) the court erred in granting summary judgment without notice or hearing on the question; (3) there exist genuine issues of material fact which make the grant of summary judgment improper; and (4) the application of § 512(4) to her case violates plaintiff's rights to an open court and a remedy at law as guaranteed by the Vermont Constitution. We hold that the trial court erred in failing to apply the six-year statute of limitations to those claims that were for other than personal injuries.

## II.

While this Court has not previously considered which statute of limitations should apply to attorney malpractice claims, it is not the first time the Court has grappled with the differences between § 512(4) and the more general provisions of § 511. Section 512 enumerates five types of actions covered by the three-year statute—assault and battery, false imprisonment, slander and libel, injury to the person, and damage to personal property—whereas § 511 is a catchall statute that applies to civil actions generally, "except as otherwise provided." Because § 511 applies to both tort and contract causes of action, it is not possible to decide which limitations period to apply to a malpractice action solely on the basis of whether the action sounds in tort or contract. See, e.g., *Union School Dist. No. 20 v. Lench,* 134 Vt. 424, 425, 365 A.2d 508, 509 (1976) (in action against architect for negligent design of roof, Court agreed with parties that "whether the action sounds in tort or contract," the applicable statute of limitations was 12 V.S.A. § 511, the general statute).

Other jurisdictions have taken a variety of approaches to this issue. See generally Koffler, *Legal Malpractice Statutes of Limitations: A Critical Analysis of a Burgeoning Crisis,* 20 Akron L. Rev. 209, 229–36 (1986) (analyzing various states' approaches to determining the applicable statutes of limitations in

attorney malpractice actions). Some states have adopted a statute of limitations specifically limited to actions for attorney malpractice, see, e.g., Cal. Civ. Proc. Code § 340.6 (West 1982), while other states have adopted broad professional malpractice statutes of limitations that include attorney malpractice actions. See, e.g., Fla. Stat. Ann. § 95.11(4)(a) (West 1982).

In states having no statute governing malpractice actions, as such, the jurisdictions are split as to whether their tort, contract or general statute of limitations should apply. Compare, e.g., *Long v. Buckley*, 129 Ariz. 141, 143, 629 P.2d 557, 559 (Ct. App. 1981) (attorney malpractice actions are governed by tort, not contract, statute of limitations), and *Hillhouse v. McDowell*, 219 Tenn. 362, 371–72, 410 S.W.2d 162, 166 (1966) (client's action against attorney for failure to prosecute personal injury suit within statute of limitations was not governed by one-year, personal-injury statute of limitations, but rather by six-year statute relating to contracts), with, e.g., *Dolce v. Gamberdino*, 60 Ill. App. 3d 124, 126, 376 N.E.2d 273, 275 (1978) (attorney malpractice actions come under the general statute of limitations). In such jurisdictions, most courts permit a plaintiff to elect between the contract and tort limitations periods depending on how the complaint is framed. See Note, *Attorney Malpractice*, 63 Colum. L. Rev. 1292, 1308–09 (1963). We find these categorizations are not helpful, given our precedent of looking to the nature of the harm suffered rather than the theory alleged by complainant and the fact that our general statute of limitations applies to both tort and contract causes of action.

■ This Court recently reiterated the principle, long followed in this jurisdiction, that the "nature of the harm done is the determining factor in construing the two limitations provisions [§§ 511 and 512], rather than the [party's] characterization of the action."[5] *Stevers v. E. T. & H. K. Ide Co.*, 148 Vt. 12,

---

[5] This approach is analogous to that taken in some other jurisdictions. See, e.g., *Giffin v. United Transp. Union*, 190 Cal. App. 3d 1359, 1362, 236 Cal. Rptr. 6, 7 (1987) (applicable statute of limitations is determined by substance or gravamen of the action, rather than by the form of the pleading); *Serrano v. Flight Motel, Inc.*, 95 Misc. 2d 669, 672–74, 408 N.Y.S.2d 198, 201 (Sup. Ct. 1978) (in determining which statute of limitations governs an action, court will look to the reality and essence of the action and not to its name).

13, 527 A.2d 658, 659 (1987). *Stevers*, an action for damages to personal property (livestock) under § 512(5), relied on *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 367 A.2d 677 (1976), which discussed the concept in more detail and observed that "since at least 1915, the applicability of [12 V.S.A. § 512] has been predicated upon the nature of the harm for which recovery is sought and not upon the nature of the action brought." *Id.* at 575, 367 A.2d at 680. In *Kinney*, the plaintiff had received personal injuries caused by the bursting of a new tire that he was mounting, and the issue was whether § 512(4) applied to a products liability action for personal injury damages even though the complaint labeled the action as one for breach of warranty. The Court held that the determination of which limitation period applied did not depend upon whether the action sounded in contract or tort since the nature of the harm—there, injury to the person—was the same under either theory. *Id.*

The "nature of the harm" was not difficult to determine in *Kinney*, where the plaintiff had suffered bodily injuries, and the decision clearly showed the governing principle behind the Court's holding: the three-year statute of limitations would apply "[w]here the injury is personal." *Id.* at 576, 367 A.2d at 680. The term is more difficult to apply to a case like the one now before the Court, where the complaint contains a mixture of allegations that do not fit neatly into one pigeonhole.

## III.

In the instant case, plaintiff alleges that, as a result of defendant's "breach of contract, negligence, and a violation of the Code of Professional Responsibility," she suffered emotional distress, personal humiliation, and the loss of custody of her son for a period in excess of five months. She seeks both compensatory and punitive damages. She contends that she "did not get what she bargained/contracted for, that is, effective legal representation." She further maintains that her interests "are largely intangible, not physical or bodily injury and not injury to personal property," and that § 511, the six-year statute of limitations, is therefore controlling. Plaintiff also argues that the loss of legal custody of her child makes this case similar to those cases where a plaintiff has lost legal rights, such as the loss of a chose in action. See *Higa v. Mirikitani*, 55 Haw. 167,

170, 517 P.2d 1, 4 (1973) ("virtually all claims for legal malpractice [concern] a *non-physical* injury to an *intangible* interest of the plaintiff") (emphasis in original); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 182, 491 P.2d 421, 424, 98 Cal. Rptr. 837, 840 (1971) (legal malpractice "usually causes damage to intangible property interests"). She asserts that one might suffer stress and trauma as a result of the loss of any legal right, but that that does not make the nature of the harm alleged into an action for bodily hurt or personal injury.

Defendant contends that the underlying nature of plaintiff's cause of action is an "injury to the person" and that it therefore comes under the three-year statute of limitations, § 512(4). He argues that plaintiff's claims are not "intangible," since in order to recover for negligently caused emotional distress when there has been no physical impact, a claimant must ordinarily suffer substantial bodily injury or sickness. See *Vaillancourt v. Medical Center Hosp. of Vt.*, 139 Vt. 138, 143, 425 A.2d 92, 95 (1980). In support of his contention that the loss to plaintiff is purely personal, defendant points to the case of *Bland v. Smith*, 197 Tenn. 683, 277 S.W.2d 377 (1955). In *Bland*, plaintiff sued an attorney for negligence in the handling of his divorce action, alleging that he not only sustained the loss of his property, but also suffered great annoyance, aggravation, embarrassment, humiliation and mental anguish. In looking to determine "the real purpose or the gravamen of the action," *id.* at 686, 277 S.W.2d at 379, the Tennessee Supreme Court concluded that the plaintiff based his cause of action on "injuries to his person" and therefore the one-year statute in suits "for personal injuries" applied rather than the six-year statute for contract actions. *Id.* at 689–90, 277 S.W.2d at 380–81.

The line that delineates the underlying nature of a cause of action is not always a clearly defined one, particularly in a legal malpractice action. See *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 85, 716 P.2d 575, 578 (1986) (legal malpractice may constitute both a tort and a breach of contract). We conclude that the nature of the harm alleged to have been done to plaintiff herein is mixed—some of her alleged injuries are personal injuries within the meaning of § 512(4), while some are not. A single complaint may contain multiple causes of action, some of which are time-barred and some not. See *Bevins v. King*, 147

Vt. 203, 204, 514 A.2d 1044, 1045 (1986). Plaintiff's complaint falls into this category.

We hold that plaintiff's claims for damages resulting from her mental anguish, emotional distress, and personal humiliation are time-barred because they constitute injuries "to the person" within the meaning of § 512(4). See, e.g., *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 306, 162 P.2d 133, 139 (1945) ("It seems to us that the mind of an individual, his feelings and mental processes, are as much a part of his person as his observable physical members. An injury, therefore, which affects the sensibilities is equally an injury to the person as an injury to the body would be."); see also Black's Law Dictionary 707 (5th ed. 1979) (term "personal injury" "may include such injuries to the person as . . . mental suffering"). We recognize that "the phrase 'injury to the person' has consistently been applied in its legal sense to cover situations involving bodily hurt, and not to cover all actions that allege harm that is somehow personal to the plaintiff."[6] *Alpstetten Ass'n v. Kelly*, 137 Vt. 508, 512, 408 A.2d 644, 646 (1979). Accordingly, in *Alpstetten*, this Court applied the six-year rather than the three-year statute of limitations where the defendant counterclaimed that he was inconvenienced, harassed and embarrassed as a result of the plaintiff's decision to shut off the water supply to the defendant's vacation home complex. *Id.* at 512–13, 408 A.2d at 646. The Court held that § 511 applied since the alleged harm centered on an interference with the use and enjoyment of defendant's property rather than a bodily injury. *Id.*

---

[6] Prior to the 1947 revision of the Vermont Statutes, the predecessor statute to 12 V.S.A. § 512(4) mandated a three-year statute of limitations for "recovery of damages for *bodily hurt* or injury to personal property suffered by a person." P.L. § 1649 (emphasis added). Because the change in language was accomplished during a general revision of the statutes rather than by direct amendatory action by the Legislature, one could argue that the change in language from "bodily hurt" to "injury to the person" was not intended to change the meaning of the statute. See *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 240, 204 A.2d 155, 157 (1964) ("When changes . . . come about only as a result of a revision, caution is required in determining whether or not any substantive change in the law was intended."). In light of our determination herein, we need not consider whether the change in language effected a substantive change in the statute.

Here, the harm for which plaintiff seeks damages is, in part, the emotional distress that she suffered as a result of defendant's alleged negligent representation of her interests. Absent physical contact, one may recover for negligently caused emotional distress only when the distress is "accompanied by substantial bodily injury or sickness." *Vaillancourt,* 139 Vt. at 143, 425 A.2d at 95. Accordingly, one must show some physical effect of any claimed emotional injury—some bodily hurt—in order to prevail.[7]

We note that some courts have permitted plaintiffs to recover for emotional distress under insurance policies providing coverage for "bodily injury." See *California Mut. Ins. Co. v. Robertson,* 262 Cal. Rptr. 173, 178 (1989) ("bodily injury," as term is used in insurance policies, can result from emotional distress); *Bloodworth v. Carroll,* 455 So. 2d 1197, 1205 (La. Ct. App. 1984) ("definition of bodily injury includes mental anguish, fright, distress and humiliation"); cf. *State Farm Fire & Cas. Co. v. Westchester Inv. Co.,* 721 F. Supp. 1165, 1167 (C.D. Cal. 1989) (physical manifestations of emotional distress—dry throat, knot in stomach, rise in body temperature—constitute bodily injury; therefore, insurer is potentially liable for renter's claim of emotional distress resulting from discrimination). But see *Aetna Cas. & Sur. Co. v. First Sec. Bank of Bozeman,* 662 F. Supp. 1126, 1128 (D. Mont. 1987) (allegations of emotional distress do not fall within definition of "bodily injury" in insurance policy); *St. Paul Fire & Marine Ins. v. Campbell County School,* 612 F. Supp. 285, 287 (D. Wyo. 1985) (same). The rationale for including emotional distress within the term "bodily injury" is that it is often difficult, even for doctors, to distinguish between mental and physical injuries, since emotional disturbances have physical aspects and physical disturbances have emotional aspects. *Abellon v. Hartford Ins. Co.,* 167 Cal. App. 3d 21, 27, 212 Cal. Rptr. 852, 855 (1985); see also W. Keeton, Prosser and Keeton on Torts § 12, at 56 and § 54, at 361

---

[7] By this statement, we do not necessarily foreclose the possibility of allowing for emotional-distress damages absent physical manifestations under special circumstances where the nature of the tortious act guarantees the genuineness of the claim. See W. Keeton, Prosser and Keeton on Torts § 54, at 362 (5th ed. 1984) (discusses actions for negligent transmission of a message, especially one announcing death, and negligent mishandling of corpses).

(5th ed. 1984) (mental injuries have physical symptoms capable of objective proof). According to these courts, the physical effects of emotional distress are sufficient to satisfy the "bodily injury" requirement. *Abellon*, 167 Cal. App. 3d at 27, 212 Cal. Rptr. at 856.

■■ Based on the foregoing considerations, we conclude that, for purposes of limitations on actions, a claim for damages resulting from emotional distress is an "injury to the person" and must be commenced within three years after the cause of action accrues. Whether the physical effects of an alleged emotional injury are severe enough to warrant an award of compensatory damages is a question of fact for the jury, see *id.* at 27, 212 Cal. Rptr. at 855; determining the appropriate statute of limitations does not depend upon resolution of this question. Accordingly, plaintiff's claim for damages resulting from emotional distress and personal humiliation are barred by § 512(4).

■ Some of the damages sought by plaintiff, however, are for economic losses that do not constitute personal injuries. These claims involve the costs incurred by her to secure the return of her child, including such expenses as her attorney's fees. Not being claims for personal injury, they fall under the limitations provisions of § 511. Since plaintiff was precluded from pursuing such claims by the court's ruling, this matter must be remanded for further proceedings on those issues.

## IV.

■■ Plaintiff contends that the trial court erred in granting summary judgment to defendant without notice or a hearing on defendant's motion. While the procedure followed in this matter was not exemplary, the remedial measures taken by the court after discovering the lack of notice to plaintiff were sufficient to cure the defect. The court converted defendant's motion to dismiss into a motion for summary judgment by examining matters outside of the pleadings. See V.R.C.P. 12(c). Upon converting a motion to dismiss to one for summary judgment, the court must notify the parties as to the changed status of the motion, and give them a reasonable opportunity to submit extra-pleading materials as permitted by V.R.C.P. 56(e). *Bennett Estate v. Travelers Ins. Co.*, 138 Vt. 189, 191, 413 A.2d 1208,

1209 (1980). See generally 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1366 (1969) (analysis of virtually identical federal rule). While the court originally did not notify plaintiff as to the change in status of the motion, the court did allow her a reasonable opportunity to respond to defendant's motion after becoming aware of the error. Plaintiff thereafter presented an affidavit and certain documentary evidence, together with a brief. A hearing on the motion was not required. V.R.C.P. 78(b)(2); see Reporter's Notes 1984 Amendment to V.R.C.P. 56(c). The procedural defect having been cured, there was no reversible error.

## V.

■■ Plaintiff also asserts that genuine issues of material fact existed which should have precluded the grant of summary judgment. Summary judgment is appropriate only when the material properly before the court clearly shows that there is no genuine issue as to any material fact. *Miller v. Merchants Bank*, 138 Vt. 235, 237, 415 A.2d 196, 198 (1980). The moving party has the burden of proving, both before the trial court and on appeal, that no disputed issues of material fact exist. *Sykas v. Kearns*, 135 Vt. 610, 612, 383 A.2d 621, 623 (1978). All reasonable doubts and inferences are to be resolved in favor of the nonmoving party in determining whether a genuine issue exists as to any material fact. *Pierce v. Riggs*, 149 Vt. 136, 139, 540 A.2d 655, 657 (1987). A defendant moving for summary judgment satisfies his legal burden when he presents at least one legally sufficient defense that would bar plaintiff's claim as a matter of law, and shows that the case involves no genuine issues of material fact. See *Smith v. Day*, 148 Vt. 595, 596–97, 538 A.2d 157, 158 (1987).

■ Plaintiff asserts that the question as to the applicability of § 512(4) is a genuine issue of a material fact. While this question was certainly at issue, the applicability of a statute of limitations is a matter of law for the court to decide. Where, as here, the underlying facts are not in dispute, a controversy over what law applies would not preclude a grant of summary judgment. *Tierney v. Tierney*, 131 Vt. 48, 51–52, 300 A.2d 544, 547 (1972).

██ Three other factual issues advanced by plaintiff—whether the joinder of plaintiff's claim with her husband's claim for malpractice amounted to a pro se motion to join a party under V.R.C.P. 15(c), whether plaintiff's husband was plaintiff's agent for purposes of defendant's waiver, and the date of the accrual of the cause of action against defendant—were not raised before the trial court, and thus will not be considered on appeal. See *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983) (well-settled rule is that party opposing summary judgment motion must inform trial court of reasons, legal and factual, why summary judgment should not be entered, and if it does not do so, and loses the motion, it cannot raise such reasons on appeal); *Lanphere v. Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982) (contentions not raised or fairly presented to trial court are not preserved for appeal).

Plaintiff's claim of fraudulent concealment does not create a genuine issue of material fact, even resolving all reasonable doubts and inferences in plaintiff's favor. This contention is not supported by the record and was not supported by the evidence plaintiff submitted to the trial court.

██ There were thus no genuine issues of material fact before the trial court, and defendant has asserted a valid defense—the three-year statute of limitations—which would entitle him to summary judgment as a matter of law on plaintiff's claims for personal injury. The court did not err in entering summary judgment against plaintiff on such claims.

## VI.

██ Finally, plaintiff argues that to apply the three-year statute of limitations to her, so as to bar her suit, would violate her rights under the Vermont Constitution. Plaintiff claims a violation of her constitutional right to a remedy at law, Vt. Const. ch. I, art. 4, and her right to an open court, Vt. Const. ch. II, § 28, yet plaintiff fails clearly to delineate how her rights under these provisions have been violated. We have often stated that we will not consider state constitutional issues which have been inadequately briefed. See, e.g., *State v. Gabaree*, 149 Vt. 229, 231 n.2, 542 A.2d 272, 273 n.2 (1988). The merits of the issue herein have not been made sufficiently apparent to warrant fur-

ther briefing or the further attention of this Court. See *State v. Jewett*, 146 Vt. 221, 225, 500 A.2d 233, 236 (1985). Accordingly, we do not consider the state constitutional question.[8]

*Reversed and remanded.*

---

[8] We note, without deciding, that states which have a constitutional provision similar to that set forth in chapter I, article 4 of the Vermont Constitution have found no violation of this provision for statutes of limitations that bar lawsuits after a reasonable length of time has elapsed following discovery of a cause of action. See, e.g., *Overland Construction Co. v. Sirmons*, 369 So. 2d 572, 574–75 (Fla. 1979).