**Judith G. and Robert RENNIE v. STATE of Vermont, et al.**

[762 A.2d 1272]

No. 99-089

October 23, 2000. Plaintiffs Judith and Robert Rennie appeal from a summary judgment of the Windham Superior Court in favor of defendants, the State of Vermont and three state employees. Plaintiffs contend the trial court erroneously: (1) dismissed her wrongful discharge claim on the ground that Rennie had failed to exhaust her administrative remedies; and (2) dismissed her other claims as time barred. We affirm.

Rennie worked for the Department of Social and Rehabilitation Services from June 25, 1990, until she left her position for medical reasons on April 15, 1992. The following May, Rennie filed a grievance with the Labor Relations Board, alleging that the Department had violated provisions of the collective bargaining agreement, rendered an unsatisfactory performance evaluation without just cause, bypassed progressive corrective action, failed to provide adequate notice of performance deficiencies and opportunity to remediate, changed standards of performance, and misused the process of corrective action. The complaint further alleged that the Department had violated the agreement by subjecting her to a campaign of harassment in retaliation for her grievances and refusal to resign her position voluntarily. Rennie sought removal and destruction of the evaluation and a cease and desist order. On June 1, 1992, shortly after filing the grievance, Rennie formally resigned her position.

At a hearing on the grievance before the Board in December 1992, the State agreed to remove and destroy the adverse performance evaluation, and moved for dismissal and/or summary judgment. Rennie thereupon moved to amend her grievance to assert a claim for wrongful constructive discharge. The Board denied the motion to amend, and granted the State's motion to dismiss. No appeal was taken from the Board's decision.

On May 31, 1995, Rennie and her husband filed a complaint against defendants in superior court, alleging wrongful constructive discharge, tortious interference with contract, violation of the Vermont Fair Employment Practices Act under 21 V.S.A. § 495, intentional infliction of emotional distress, violation of her civil rights actionable under 42 U.S.C. § 1983, loss of consortium, and "prima facie tort." The court granted the State's unopposed motion for summary judgment, ruling that Rennie had failed to exhaust administrative remedies on Count I (wrongful discharge), and had failed to file the complaint within the three-year statute of limitations applicable to the remaining claims. This appeal followed.

We review a motion for summary judgment using the same standard as the trial court. See *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158, 624 A.2d 1122, 1127 (1992). Summary judgment is appropriate only when the moving party has dem-

onstrated that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. See *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). In determining whether material facts exist for trial, we must resolve all reasonable doubts in favor of the party opposing summary judgment. *Hodgdon*, 160 Vt. at 158-59, 624 A.2d at 1127.

Rennie first asserts that the court erred in dismissing the wrongful discharge claim for failure to exhaust administrative remedies. This Court has consistently held that when administrative remedies are established by statute or regulation, a party must pursue, or "exhaust," all such remedies before turning to the courts for relief. *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). This long settled rule of judicial administration "serves the dual purposes of protecting the authority of the administrative agency and promoting judicial efficiency." *Id.* at 512, 702 A.2d at 60.

Here, there is no dispute that the Board · had jurisdiction to decide the wrongful constructive discharge claim. See *In re Baldwin*, 158 Vt. 644, 646, 604 A.2d 790, 791 (1992) (affirming Board's finding that evidence failed to support grievant's claim that working conditions were so intolerable as to support wrongful constructive discharge claim); *In re Bushey*, 142 Vt. 290, 298, 455 A.2d 818, 822 (1982) (reversing Board's finding of wrongful constructive discharge where evidence failed to sustain claim that resignation was involuntary); *In re Stacey*, 138 Vt. 68, 70, 411 A.2d 1359, 1360 (1980) (involuntary termination from employment is an aspect of grievant's employment and therefore Board had jurisdiction over grievance). Indeed, Rennie clearly recognized her obligation to grieve the alleged wrongful termination through the established administrative process. At the hearing before the Board in December 1992, she moved to amend her complaint to add a claim of wrongful constructive discharge. The Board denied the motion, however, explaining in its written decision that Rennie had offered no justifiable excuse for waiting until the very day of the hearing, seven months after her resignation in June, to assert the claim, and that the amendment would prejudice the employer, trigger an additional round of discovery, and delay resolution of this and other cases pending before the Board. Rennie did not appeal the Board's decision.

As noted, where the Board has jurisdiction to determine a grievance, an employee may not avoid the administrative process by pursuing the matter directly in court. See *Jordan*, 166 Vt. at 511, 702 A.2d at 60; *Boynton v. Snelling*, 147 Vt. 564, 566, 522 A.2d 232, 233-34 (1987). Although Rennie failed in her last-minute effort to amend the grievance to allege a wrongful constructive discharge, failed to appeal the Board's denial of the motion to amend, and does not contest that decision here, she asserts that the exhaustion requirement was nevertheless satisfied. We disagree. The exhaustion doctrine is designed to ensure that a grievance is fully explored and litigated before the administrative body possessing the pertinent experience and expertise in the subject area; the doctrine thus serves to preserve the authority of the administrative body, and to promote judicial efficiency. See *Jordan*, 166 Vt. at 512, 702 A.2d at 60. Rennie's belated and unsuccessful motion to amend did not satisfy the prerequisites, or the purposes, of the exhaustion doctrine. Accordingly, we conclude that the trial court correctly entered judgment for the State on the wrongful discharge claim.

Rennie next contends the trial court incorrectly applied the three-year statute of limitations to bar the remaining causes of action. She asserts that the claims accrued only when she resigned on June 1, 1992, and therefore that the complaint,

filed on May 31, 1995, was timely. The statute of limitations runs from the time when a plaintiff can first sue and recover its demand. See *Furlon v. Haystack Mountain Ski Area, Inc.*, 136 Vt. 266, 270, 388 A.2d 403, 406 (1978). Here, all of the essential acts comprising the claims occurred on or before April 15, 1992, the date her employment terminated. Accordingly, the trial court correctly concluded that the claims were time barred.

Rennie also contends that the court erred in failing to apply the six-year statute of limitations under 12 V.S.A. § 511 to the tortious interference claim. We have long grappled with the differences between the three-year statute under 12 V.S.A. § 512 and the provisions of the six-year statute, codified at 12 V.S.A. § 511. Section 512 enumerates five types of actions covered by the three-year statute,[1] including generally injuries to person and injuries to personal property, whereas § 511 is a catchall statute that applies to civil actions generally, except as otherwise provided.[2]

Although, as the State notes, this Court has not considered the statute of limitations applicable to tortious interference claims, other states have addressed the issue. Those with similarly varying statute-of-limitation periods have generally applied a shorter limitation period applicable to injuries to property or personal injuries. See, e.g., *Mazzanti v. Merck & Co.*, 770 F.2d 34, 36 (3d Cir. 1985) (applying Pennsylvania two year "injury to personal property" statute of limitations, rather than residual six-year statute, to claim for tortious interference with employment contract); *Steven D. Smith, P.C. v. Borg-Warner Sec. Corp.*, 993 P.2d 436, 445-46 (Alaska 1999) (claim for fraudulent interference with contract governed by statute of limitations applicable to "injury to the person or rights of another"); *Omega Industries, Inc. v. Chemical Bank*, 593 N.Y.S.2d 996, 998 (App. Div. 1993) (claim for tortious interference with contractual rights barred by application of New York's three-year statute of limitations applicable to injuries to personal property); *Muckelroy v. Richardson Independent School Dist.*, 884 S.W.2d 825, 829 (Tex. Ct. App. 1994) (Texas' two-year limitations period for injuries to estate or property of another, rather than residual four-year limitations period, applied to tortious interference with contract claim).

This Court has long applied the principle that the "'nature of the harm done is the determining factor in construing the two limitations provisions [§§ 511 and 512], rather than the [party's] characterization of the action.'" *Fitzgerald v. Congleton*, 155 Vt. 283, 288-89, 583 A.2d 595, 598 (1990) (quoting *Stevers v. E. T. & H. K. Ide Co.*, 148 Vt. 12, 13, 527 A.2d 658, 659 (1987)). Thus, to determine the applicable statute of limitations, we must look to the essence or gravamen of the specific claim. See *id.* at 290, 583 A.2d at 599.

Here, Rennie's complaint alleged that, as a result of the claimed tortious interference with contract, she "suffered severe physical and emotional health problems and was forced to resign her position, under duress." As we have pre-

---

[1] Section 512 provides: "Actions for the following causes shall be commenced within three years after the cause of action accrues, and not after: (1) Assault and battery; (2) False imprisonment; (3) Slander and libel; (4) Except as otherwise provided in this chapter, injuries to the person suffered by the act or default of another person, provided that the cause of action shall be deemed to accrue as of the date of the discovery of the injury; (5) Damage to personal property suffered by the act or default of another."

[2] Section 511 states: "A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter."

viously held, "claims for damages resulting from . . . mental anguish, emotional distress, and personal humiliation . . . constitute injuries 'to the person' within the meaning of § 512(4)." *Id.* at 291, 583 A.2d at 599-600. Although Rennie also asserted that as a result of the interference she "lost income, and other [employment] benefits," the gravamen or essence of the claim was that she was so physically and emotionally besieged that she had to resign. We thus conclude that the nature of the harm alleged to have been done in this case was properly characterized as personal injuries, and the fact that some economic losses were also alleged did not alter the essence or "underlying nature" of Rennie's claim. *Id.* at 290, 583 A.2d at 599. The three-year statute of limitations thus governed, and the claim was time barred.[3]

Rennie also contends that the trial court incorrectly applied the three-year statute of limitations to bar her remaining claims, arguing that the court should have applied the six-year period under 12 V.S.A. § 511. The State first raised the statute of limitations defense in its motion to dismiss, asserting that the claims were time barred under the three-year statute of limitations set forth in § 512. In her opposition to the motion, Rennie argued that none of the claims had accrued until the date she resigned, on June 1, 1992, and therefore that the claims were timely under the three-year statute. In addition, she argued that "[w]ith respect to count number two [tortious interference with contract], the applicable statute of limitations is section 511, which permits an action to be brought within six years." Rennie did not file an opposition to the

State's subsequent motion for summary judgment, which again raised the three-year statute of limitations defense as to the bulk of the claims.

The record thus discloses that — with the exception of count two — Rennie failed to raise or argue the applicability of the six-year statute of limitations at trial. The court's summary judgment order merely indicated that all of the claims alleged injuries to the person, and were barred by § 512. Nothing in the record reveals that Rennie brought to the court's attention any argument that § 511 applied to any of her claims other than count two. We have consistently held that where the court below was not presented with a fair opportunity to consider and address an issue, the claim of error is waived and we will not rule on the issue's substance. See *Long v. L'Esperance*, 166 Vt. 566, 570 n.4, 701 A.2d 1048, 1052 n.4 (1997); *Dunning v. Meaney*, 161 Vt. 287, 292, 640 A.2d 3, 6 (1993). That was plainly the case here. Accordingly, we decline to address the applicability of the six-year statute of limitations to the remaining claims.

*Affirmed.*

---

[3] This is not to hold or suggest that the essence of the injuries alleged in other cases must necessarily be characterized as injuries to the person under 12 V.S.A. § 512(4), rather than, for example, damage to personal property under § 512(5).