2012 VT 54

# Kayla L. Eaton and Robert F. Eaton v. Leroy E. Prior, Prior Polygraph, Matthew Bellmay and Vermont State Police

[58 A.3d 200]

No. 11-276

Present: **Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Kupersmith, Supr. J., Specially Assigned**

Opinion Filed July 27, 2012

Motion for Reargument Denied August 21, 2012

*Timothy B. Yarrow*, Hyde Park, for Plaintiffs-Appellants.

*Joel P. Iannuzzi* of *Cleary Shahi & Aicher, P.C.*, Rutland, for Defendant-Appellee Prior.

*William H. Sorrell*, Attorney General, and *Keith Aten*, Assistant Attorney General, Montpelier, for Defendants-Appellees Bellmay and the Vermont State Police.

¶ 1. **Skoglund, J.** Kayla Eaton's lawsuit against her former employer and supervisor for sexual assault was dismissed for failure to prosecute. She claims that her ability to prosecute the case was thwarted by a licensed polygraph examiner, Leroy Prior, who determined that she did not tell the truth in responding to questions about the alleged assault. Ms. Eaton and her father Robert Eaton filed this action against Prior, claiming negligent administration of the polygraph examination, and against the Vermont State Police and Lt. Matthew Bellmay, alleging that they improperly disclosed the examination results and conspired to cover up Prior's misconduct. The trial court entered judgment for defendants on the ground that the suit was barred by the three-year statute of limitations applicable to actions for "injuries to the person," under 12 V.S.A. § 512(4), and the Eatons appealed.

¶ 2. As explained more fully below, we conclude that the trial court correctly applied the three-year statute of limitations to bar the claims for emotional distress, but mistakenly failed to consider the applicability of 12 V.S.A. § 511's general six-year limitation

period to the claims for economic harm resulting from dismissal of the underlying lawsuit and other alleged economic costs. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

¶ 3. The material undisputed facts may be summarized as follows. In July 2004, Ms. Eaton filed a lawsuit against her former employer Okemo Mountain Resort and her former supervisor Bruce Chapman, claiming that Mr. Chapman had sexually assaulted her on the job. The parties, through their respective attorneys, agreed that Ms. Eaton and Mr. Chapman would each submit to a polygraph examination to determine the credibility of the claims, that they would employ Prior as the examiner, and that the results of the examination would be admissible as evidence in the case. Prior administered the test to Ms. Eaton on October 13, 2004. His report of the same date concluded that she did not tell the truth in claiming to have had forced sexual intercourse with Mr. Chapman in his office.

¶ 4. In a later deposition, Ms. Eaton acknowledged that Prior's administration of the examination did not "seem right" to her at the time, that she immediately discussed her concerns with her attorney, and that together they "realized there was something wrong with the test." Three weeks after the examination, on November 2, 2004, Ms. Eaton's attorney wrote to the attorney representing Mr. Chapman and Okemo asserting that "the Prior polygraph examination and the results are highly questionable, if not invalid, as an indicator of the plaintiff's truthfulness." The letter cited Prior's general "failure to adhere to the American Polygraph Association's ('APA') standards," and in particular his failure to determine Ms. Eaton's psychological state at the time of the examination, to carefully review the questions with her prior to the examination, and to record the entire examination. The letter also cited a number of "indicators of Mr. Prior's bias and negativity" during the examination.

¶ 5. Ms. Eaton submitted to a retest by a different polygraph examiner, Carl E. Tuttle, Jr., in January 2005. Tuttle's report was more favorable to Ms. Eaton. Nevertheless, for reasons not apparent from the record, Ms. Eaton's attorney moved to withdraw as counsel later that year. The trial court granted the motion on December 16, 2005, and provided sixty days for Ms. Eaton to either locate new counsel or enter her pro se appearance. On March 8, 2006, Okemo and Mr. Chapman moved to

dismiss the complaint. The trial court granted the motion later that month, noting that Ms. Eaton had neither complied with its prior order concerning the appearance of counsel nor responded to the dismissal motion.

¶ 6. In the meantime, on March 14, 2006, Ms. Eaton filed a complaint with the American Polygraph Association, alleging that Prior violated "many of the APA standards of practice" in administering her examination. She again cited, in this regard, his failure to familiarize her with the questions and procedures before the examination or to record the entire examination, as well as his use of "outdated" equipment and an alleged breach of confidentiality in disclosing the examination results to Lt. Matt Bellmay of the Vermont State Police. She also repeated her earlier claims that Prior had demonstrated "bias and negativity" through a number of improper remarks during the examination. The chairman of the APA Grievance and Ethics Committee responded to the complaint by letter dated August 16, 2006. The letter indicated that an investigation of the matter had disclosed "no violations of the APA By-Laws" by Prior, and that the Vermont State Police had denied a request for access to Prior's licensing records.

¶ 7. In early September 2006, the Eatons caused a trial court subpoena to issue for all of Prior's records relating to the polygraph examination. They asked Tuttle to analyze the disclosed material, and he reported his findings by letter in November 2006. Tuttle stated that his review of the records left him "confused" as to precisely what had occurred. He explained that it was "difficult to know what happened during this polygraph examination" because the examination charts did not have a visible "GSR tracing," and "[w]ithout the video to know exactly what occurred" he could not analyze "these charts properly."[1]

¶ 8. The Eatons filed their initial pro se complaint in this matter in October 2009, a first amended complaint the following December, and a second amended complaint in October 2010. They alleged that Prior negligently administered Ms. Eaton's polygraph examination — in violation of APA standards — in numerous respects, including failing to maintain his equipment in sound working order, failing to take Ms. Eaton's psychological condition

---

[1] "GSR" refers to galvanic skin response. See Y. Bander, Note, *United States v Posado: The Fifth Circuit Applies Daubert to Polygraph Evidence*, 57 La. L. Rev. 691, 692 (1997) (explaining that a polygraph examination "measures changes in blood pressure, pulse, respiration and galvanic skin response (GSR, or sweating)").

as a rape victim into account, failing to record the examination, and failing to produce an accurate and readable record of the examination. They also alleged that Prior intentionally harassed Ms. Eaton and caused her emotional distress during the examination, intentionally caused her to fail the examination, and breached confidentiality in disclosing the results to the State Police. As to the state defendants, they alleged that Lt. Bellmay conspired with Prior to cover up the latter's misconduct and improperly disclosed the test results. The resulting injuries allegedly included "the lost ability to sue for recovery of damages in the case of *Eaton v. Okemo*, defamation of character, slander, emotional pain, anguish, emotional distress, loss of enjoyment of life, lost income, and medical expenses."

¶ 9. Prior and the state defendants moved separately for summary judgment, each asserting that the lawsuit was barred under 12 V.S.A. § 512(4), which requires that claims for "injuries to the person" be brought within three years after the cause of action accrues, which is deemed to occur "as of the date of the discovery of the injury." The Eatons opposed the motion, asserting that they lacked sufficient information about their potential claims until November 2006, when they received Tuttle's professional assessment of the polygraph examination, and therefore that the complaint — filed in October 2009 — was timely. The trial court rejected the argument, finding that the Eatons were aware they had a claim against Prior no later than March 2006, when Ms. Eaton filed the APA grievance alleging many of the same deficiencies set forth in the superior court complaint. Accordingly, the court ruled that the claims against Prior were time-barred.

¶ 10. As to the state defendants, while acknowledging that it was difficult to "[d]etermin[e] what Lt. Bellmay and the VSP are alleged to have done to harm Ms. Eaton," the court concluded that it was clear by the time of the APA grievance that Ms. Eaton was aware of Lt. Bellmay's involvement and of a potential claim against the State for breach of confidentiality. The court further found that, with the receipt of the August 6, 2006 letter rejecting the APA grievance, the Eatons came to believe "that Lt. Bellmay was in some way withholding information from" them. This was sufficient to discover the potential claims — however "poorly defined" — against Lt. Bellmay and the State, and thus render the complaint, filed more than three years later, untimely.

¶ 11. The trial court rejected two additional arguments raised by the Eatons: first, that the limitations period was tolled from

mid-2004 through January 2008 because Ms. Eaton was suffering from a mental disability that rendered her unable to manage her affairs; second, that the claims were governed by the six-year statute of limitations applicable to actions "for recovery of damages for injury suffered as a result of childhood sexual abuse," under 12 V.S.A. § 522(a). The court thus granted the motions for summary judgment, and entered final judgment in favor of defendants. A subsequent motion for reconsideration and relief from judgment was denied. This appeal followed.[2]

¶ 12. We review a summary judgment using the same standard as the trial court, affirming such a judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Murdoch v. Town of Shelburne*, 2007 VT 93, ¶ 5, 182 Vt. 587, 939 A.2d 458 (mem.).

¶ 13. The Eatons do not dispute the trial court's ruling that § 512(4)'s three-year statute of limitations governed their claims for emotional distress. They contend, rather, that the court erred in concluding that their action against Prior accrued under the statute no later than March 2006, when Ms. Eaton filed the APA grievance.[3] An action accrues so as to trigger the statute of limitations "when a plaintiff discovers or reasonably should discover the injury, its cause, and the existence of a cause of action." *Lillicrap v. Martin*, 156 Vt. 165, 176, 591 A.2d 41, 47 (1989) (quotation omitted); see also *Earle*, 170 Vt. at 193, 743 A.2d at 1108 (observing that limitation period "begins to run when a plaintiff had information, or should have obtained information,

---

[2] In rejecting the claim relating to 12 V.S.A. § 522, the trial court ruled that defendants here neither caused nor facilitated the sexual abuse, and therefore were not subject to the statute. Cf. *Earle v. State*, 170 Vt. 183, 188, 743 A.2d 1101, 1104 (1999) (holding that claim against State for failing to prevent sexual abuse was covered by statute); *Sabia v. State*, 164 Vt. 293, 309, 669 A.2d 1187, 1198 (1995) (same). The Eatons have not briefed this issue, and therefore have waived any claim of error on appeal. *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 11, 182 Vt. 282, 938 A.2d 1215. The Eatons also claimed below that the statute was tolled as a result of defendants' "fraudulent concealment" of their claims, under 12 V.S.A. § 555. None of the allegedly fraudulent acts, however, has any bearing on the findings and conclusion that the Eatons became aware of their potential claims at least as early as March or August 2006, rendering the October 2009 complaint untimely.

[3] The Eatons have not challenged the trial court's findings as to the accrual date of their claims against the state defendants and therefore have waived any claim of error on appeal. *Lamell*, 2007 VT 83, ¶ 11.

sufficient to put a reasonable person on notice that a particular defendant may have been liable for the plaintiff's injuries" (quotation omitted)).

¶ 14. The Eatons concede that they were aware of the harm and its cause, but argue that they were not reasonably aware of a potential cause of action against Prior until they received Tuttle's professional analysis in November 2006, so that the complaint — filed in October 2009 — was timely. The claim is unpersuasive. Both the letter from Ms. Eaton's attorney in November 2004 and the subsequent APA grievance in March 2006 identified nearly all of the claimed deficiencies that formed the basis of the Eatons' superior court complaint. Tuttle's letter identified only one distinct additional problem, the absence of a clear "GSA tracing," but the great bulk of the Eatons' claims were plainly known or suspected well before the receipt of his analysis. The law does not require absolute certainty for the statute to run. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 456, 752 A.2d 26, 31 (2000) (holding that statute did not commence on plaintiff's negligence claim against surveyor until he acquired evidence to "*suspect* that the southern boundary depicted on the survey" was inaccurate) (emphasis added). There is no reasonable dispute here that the Eatons' action accrued no later than March 2006. Accordingly, the claims for personal injury were untimely.

¶ 15. Even if the claims accrued in March 2006 or earlier, however, the Eatons contend that the complaint was timely because Ms. Eaton's inability to manage her affairs tolled the limitations period from mid-2004 until January 2008. They rely on 12 V.S.A. § 551(b), which provides that "the time during which [a] person is insane shall not be taken as a part of the time limited for the commencement of [an] action," and *Fila v. Spruce Mountain Inn*, which held that "insanity" under this provision means that the "person's mental state makes him unable to manage his business affairs or estate, or to comprehend his legal rights and liabilities." 2005 VT 77, ¶ 8, 178 Vt. 323, 885 A.2d 723 (quotations omitted).

¶ 16. Support for the tolling claim rests on several letters from Ms. Eaton's psychotherapist. The key letter, dated April 12, 2011, states that the therapist treated Ms. Eaton from June 2004 until January 2008, and that during this period Ms. Eaton met the diagnostic criteria for post-traumatic stress disorder, that she

needed a great deal of help functioning, and that her ability to manage her daily affairs "was profoundly impacted."

¶ 17. The trial court was unpersuaded. While the letters might show that Ms. Eaton suffered from stress, trauma, and depression, the court found that they were insufficient to raise a genuine factual dispute as to her capacity to pursue her legal interests in light of the overwhelming record evidence that she actively sought to protect her rights during the period in question. See *Fila*, 2005 VT 77, ¶ 12 (recognizing that — while generally a jury question — the trial court may decide a party's capacity to pursue his or her legal rights under § 551 where the evidence is insufficient to raise a factual dispute). The evidence included Ms. Eaton's complaint against Okemo and Mr. Chapman filed in July 2004; Ms. Eaton's deposition testimony that she personally came to believe that Prior's polygraph examination was flawed, and that she discussed her concerns with her attorney immediately afterwards; Ms. Eaton's acknowledgment that her attorney's letters seeking to invalidate the test expressed both of their opinions; Ms. Eaton's further testimony that she expressed her concerns about Prior's polygraph examination to Mr. Tuttle, asked him to review the results, and voluntarily submitted to a new examination; Ms. Eaton's APA grievance, which she personally signed and filed in March 2006, articulating in detail the alleged deficiencies in Prior's administration of the examination; and Ms. Eaton's testimony that she and her father "sat down [and] coordinated a series" of document requests from Prior in September 2006 in order to obtain information relating to the examination, with a view toward clarifying their legal rights.[4]

¶ 18. Thus, whatever psychological distress she might have suffered from the assault and subsequent polygraph examination, the trial court found that the record indisputably showed an "intense, prolonged involvement by Ms. Eaton in pursuing her rights" which was fundamentally inconsistent with the claim that her psychological condition impaired her ability to protect her legal interests. The facts and law amply support the court's

---

[4] In their reply brief, the Eatons assert for the first time on appeal that Ms. Eaton's deposition was not fairly conducted, and that a fair proceeding would have revealed that her father acted on her behalf in all matters relating to the polygraph examinations. The argument was not properly preserved for review. See *Lamell*, 2007 VT 83, ¶ 11 (claims not raised in appellant's original brief will not be considered on appeal).

conclusion. See, e.g., *Todish v. CIGNA Corp.*, 206 F.3d 303, 305-06 (3d Cir. 2000) (affirming summary judgment for defendant where, despite evidence of mental impairment, plaintiff's claim that she was unable to pursue her legal rights was inconsistent with evidence that she sought to hire legal counsel to represent her in grievance hearing, attempted to obtain transcript of hearing, requested information about pursuing appeal, and applied for disability benefits); *L.A.B. v. P.N.*, 533 N.W.2d 413, 417 (Minn. Ct. App. 1995) (affirming summary judgment for defendant, notwithstanding affidavit of plaintiff's therapist attesting that she was incapable of prosecuting claim, where affidavit was fundamentally "inconsistent with the fact that [plaintiff] drafted and filed her detailed complaint with the medical practice board *before* the statute of limitations expired"). Accordingly, we find no error.

¶ 19. Finally, the Eatons contend the trial court erroneously barred their claims for economic damages resulting from the dismissal of Ms. Eaton's complaint against Okemo and Mr. Chapman — a dismissal proximately caused by their attorney's withdrawal from the case but ultimately attributable, they contend, to Prior's inaccurate polygraph examination. They also claim economic harm in the form of lost income and medical expenses. These claims, they assert, are separately governed by 12 V.S.A. § 511, the general six-year statute of limitations applicable in civil actions, and therefore remain timely.[5] We note that although this argument was expressly raised in opposition to defendants' motions for summary judgment, the trial court failed to address it.

¶ 20. "We have repeatedly held [that] 'it is the nature of the harm done, rather than the plaintiff's characterization of the cause of action, that determines which statute of limitations governs.'" *Egri v. U.S. Airways, Inc.*, 174 Vt. 443, 444, 804 A.2d 766, 767 (2002) (mem.) (quoting *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. at 455, 752 A.2d at 31). We have also recognized that "this principle applies when a plaintiff alleges harm that falls into more than one category" so that some claims may be barred while others may not. *Id.*

¶ 21. In *Fitzgerald v. Congleton*, for example, the plaintiff asserted that, as a result of the defendant's legal malpractice, she

---

[5] Subject to certain exceptions not applicable here, 12 V.S.A. § 511 provides that "[a] civil action . . . shall be commenced within six years after the cause of action accrues and not thereafter."

suffered "emotional distress" and "personal humiliation" through the loss of custody of her son, as well as "the costs incurred by her to secure the return of her child," including attorney's fees. 155 Vt. 283, 289, 293, 583 A.2d 595, 599, 601 (1990). We thus observed that "the nature of the harm alleged to have been done to plaintiff herein is mixed — some of her alleged injuries are personal injuries within the meaning of § 512(4), while some are not." *Id.* at 290, 583 A.2d at 599. We concluded that the emotional distress claims were time-barred under the three-year limitations period of § 512 while the claim for costs and expenses was controlled by the general six-year provision of 12 V.S.A. § 511, and therefore remained timely. *Id.* at 293, 583 A.2d at 601.

■ ¶ 22. We reached a similar conclusion in *Politi v. Tyler*, an action for malpractice and intentional infliction of emotional distress against a court-appointed psychologist, upholding the trial court's simultaneous dismissal of the plaintiff's emotional distress claim under the three-year statute and refusal to dismiss the malpractice claim to the extent that it alleged "economic losses incurred in the effort to retain custody of her child." 170 Vt. 428, 435, 751 A.2d 788, 793 (2000); see also *Egri*, 174 Vt. at 445, 804 A.2d at 768 ("[W]here a complaint clearly alleges injury covered by § 512 and injury covered by § 511, the two different limitation periods apply, even though there is only one wrongful act.").

■ ¶ 23. To be sure, the mere fact that economic harm is alleged will not invariably invoke § 511's six-year limitation provision where the "gravamen or essence" of the claim remains personal injury. See *Rennie v. State*, 171 Vt. 584, 587, 762 A.2d 1272, 1276 (2000) (mem.) (holding that, although plaintiff claimed she lost income and other economic benefits from alleged tortious interference, this did not alter the "underlying nature" of the claim as one for personal injuries governed by § 512's three-year limitation period). Defendants assert that this is precisely the case here, and that any claims for economic loss were inextricably related to the emotional distress suffered by Ms. Eaton as a result of the allegedly improper polygraph examination and disclosure. As noted, however, the trial court did not address or resolve this issue. Accordingly, we conclude that the case must be remanded for the trial court to consider whether the claims for economic harm are sufficiently distinct from the claims for emo-

tional distress to be governed by § 511 and therefore remain timely.[6]

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed herein.*

---

[6] Although we remand for reconsideration of the statute-of-limitations issue, we express no opinion on whether the Eatons' complaint for negligent administration of a polygraph examination and related claims states a valid cause of action.